**ALTON MEMORIAL HOSPITAL, etc., Plaintiff-Appellee,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant,**

v.

**Scott H. JOHNSTON, et al., Third Party Defendants.**

No. 81–1062.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1981.
Decided July 29, 1981.

P. Terence Crebs, St. Louis, Mo., for defendant-appellant.

G. Keith Phoenix, St. Louis, Mo., for plaintiff-appellee.

Before SPRECHER and CUDAHY, Circuit Judges, and EAST,* Senior District Judge.

SPRECHER, Circuit Judge.

A hospital maintained a pension plan for its employees. Based upon the advice of its enrolled actuary, an insurance company, the hospital changed the plan from contributory to non-contributory. The insurance company had stated that the change could be made at a minimal cost to the hospital.

But the insurance company had mistakenly calculated the cost of the change. Upon discovering its mistake, the insurance company informed the hospital of the correct, substantially higher cost to the hospital. The hospital approved the plan as revised, but sued the insurance company for damages under common law principles of negligence, gross negligence, and fraud. The insurance company answered with denials of certain allegations and a defense of, among other theories, contributory negligence.

Subsequently, the insurance company filed a counterclaim against the hospital

---

* Honorable William G. East, Senior District Judge for the District of Oregon, is sitting by designation.

alleging that the hospital was liable to the insurance company under ERISA because the hospital and the insurance company were co-fiduciaries and one co-fiduciary can seek contribution and indemnification from another. The district court dismissed the counterclaim because the only harm occurred to the hospital, not to the plan or its beneficiaries. We agree, and affirm.

## I

Prior to January, 1977, Alton Memorial Hospital ("Hospital"), an Illinois not-for-profit corporation, maintained a contributory, defined benefit pension plan for its employees. This plan required a contribution to the pension plan both by each employee and by the Hospital. Metropolitan Life Insurance Company ("Metropolitan"), a New York mutual insurance company, was the enrolled actuary for the plan. The plan guaranteed a defined benefit for each eligible employee; the benefit was calculated according to a formula set out in the plan. Under the defined benefit plan, the risks of the plan's performance rested solely on the hospital, not on the plan participants or beneficiaries. In such a plan, the employer pays into the fund an amount determined by the amount of reserves in the plan and other defined factors. If the reserves are low, the employer pays a higher amount; if the reserves are high, the employer pays a lesser amount.

According to the Hospital, prior to January 7, 1977, John P. Neal, a pension consultant for Metropolitan, orally suggested that the Hospital change its plan from contributory to non-contributory. By this change, employees would no longer contribute to the plan; the Hospital would make all contributions. The Hospital states that it then requested Metropolitan to prepare cost figures for the proposed non-contributory plan. Metropolitan's Technical Services Union prepared those cost estimates and quoted them to Neal who, in early January, 1977, quoted them to the Hospital. The Hospital then requested written verification of the cost.

Neal's written verification of the cost was dated January 7, 1977. In his letter to the Hospital, he stated:

> As we discussed, I have two suggestions to make with regard to your plan.
> . . . .
> My first suggestion then would be, because of the increased cash flow, that you consider having the plan operate on a non-contributory basis. . . .
> If you were to go non-contributory as of 1–1–76, the cost of the plan would be $12,700. This would be the total cost of the plan. If the cost factors e. g., number of employees, salaries, turnover, etc. stayed the same, then there would be a minimal increase in this cost as the years go by. In any event, it appears that the cost increase will be gradual.

R., Def.Exhibit A.

The Hospital states that, after it received Neal's letter, it requested Metropolitan to reverify the cost estimates in Neal's letter, and that Metropolitan did so. On January 12, 1977, the Hospital's Personnel Committee discussed Metropolitan's recommendation and adopted a resolution recommending that the Hospital change its pension plan from contributory to non-contributory. On January 19, the Hospital notified its employees that no pension plan deduction would be made in their January 21 paychecks in anticipation of possible changes in the pension plan.

On January 26, the Hospital's Executive Committee adopted a resolution accepting the Personnel Committee's recommendation. The Executive Committee resolution stated that the change from contributory to non-contributory would be made effective January 1, 1976, and that all employee contributions made after that date would be refunded.

On February 11, 1977, the Hospital notified Metropolitan of its decision to change from contributory to non-contributory and requested that Metropolitan refund all contributions made after January 1, 1976. Metropolitan did refund the employee contributions to the Hospital which, in turn, made the appropriate refunds to the employees.

The benefits of the new plan, however, were soon discovered to be too good to be true. On or about March 3, 1977, Metropolitan notified the Hospital that it had made a mistake. Metropolitan then stated that the cost to the Hospital of the non-contributory plan would be about $89,000 for 1977 and that future annual contributions would be even higher.

Thereafter, conferences were held between Metropolitan and the Hospital, but the parties were unable to resolve their dispute. The Hospital requested Metropolitan to stand behind its original figures; Metropolitan refused. Metropolitan requested the Hospital to change the plan back to a contributory plan; the Hospital refused. The Hospital determined that continuation of the non-contributory plan was necessary and, thus, gave final approval to the revised plan, while at the same time bringing suit to recover damages.

The proceedings stemming from the original suit have become quite tangled. The Hospital sued Metropolitan in Illinois state court on three counts. Count I alleged that Neal, Metropolitan's agent, negligently advised the hospital to change from a contributory to a non-contributory plan. Count II alleged that Neal's advice constituted wilful and wanton conduct. Count III alleged that Metropolitan's entire course of action, including reverification of the cost estimates, amounted to the rendering of fraudulent advice. Metropolitan removed the action to district court on the basis of diversity of citizenship.

In its answer, Metropolitan admitted that its agent, Neal, had suggested the change from contributory to non-contributory, admitted that the Hospital had contacted Metropolitan's Regional Director of Pensions, but denied the other allegations. Metropolitan denied that it ever occupied a position of trust and confidence with the Hospital or that it owed any duty to give true information and advice. Metropolitan asserted a defense of contributory negligence and also asserted that the Hospital's actions in approving the revised plan amounted to either or all of: estoppel, waiver, accord and satisfaction, or settlement.

Subsequently, nearly eighteen months after filing its answer, Metropolitan filed a counterclaim and third-party complaint against the Hospital and individual officers of the Hospital: Director of Finance, Personnel Director, Associate Administrator, ex-Assistant Administrator, Administrator; the twelve members of the Executive Committee; and the seven members of the Personnel Committee. The counterclaim and third-party complaint attempted to bring the case within the purview of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Metropolitan alleged that the Hospital and each of the third-party defendants were, pursuant to ERISA, fiduciaries with respect to the pension plan, and that each defendant was negligent and had breached its fiduciary duties under ERISA by following Metropolitan's advice. Metropolitan then alleged that, but for these breaches of fiduciary duties, the plan would not have been changed. As a result, Metropolitan argued, the parties were actually liable to Metropolitan for all or part of the Hospital's damages.

The Hospital and the third-party defendants moved to dismiss the counterclaim and third-party complaint for failure to state a claim, on the basis that none of them owed any fiduciary or other duties to Metropolitan. The district court granted the motion to dismiss, finding that the Hospital, as plan administrator, owed a fiduciary duty to the plan, but owed no duty to Metropolitan. The district court concluded that Metropolitan was improperly attempting to transform the issue of the Hospital's alleged contributory negligence, which might be pled as an element regarding plaintiff's burden of proof or as an affirmative defense, into an ERISA counterclaim and third-party complaint against the Hospital.

Metropolitan then filed an amended counterclaim and third-party complaint, substantially similar to the original counterclaim and third-party complaint. The court dismissed the amended counterclaim and third-party complaint on the basis of its

order dismissing the initial counterclaim and third-party complaint.

Metropolitan then requested the district court to either reconsider its dismissal or to give permission for an immediate appeal pursuant to 28 U.S.C. § 1292(b). The district court gave permission to appeal, which brings the issue to this Court. Metropolitan argues that both the Hospital and Metropolitan were fiduciaries under ERISA, that the Hospital and Metropolitan both breached their statutorily imposed fiduciary duties, and that, therefore, Metropolitan's counterclaim and third-party complaint state a claim in seeking contribution or indemnity from the Hospital for the Hospital's alleged breach of duties.

## II

The cotter pin of Metropolitan's appeal is its theory that the Hospital and third-party defendants owe a duty of care to Metropolitan. But Metropolitan's theory is as insecure as a cotter pin which has been inserted but not flanged. Metropolitan does not allege, nor do we see how it could, that the Hospital and third-party defendants owe it any duty under the common law. Rather, Metropolitan argues that because this situation involves a pension plan, and because ERISA imposes on the Hospital a fiduciary duty to participants and beneficiaries under that plan, somehow the Hospital has a duty to Metropolitan. This is a curious argument indeed, especially given the context of the underlying suit in which the Hospital seeks damages that it alone suffered through a series of events which did not in any way affect the pension plan or its beneficiaries or participants.

■ First, we begin with the language creating fiduciary duties under ERISA. 29 U.S.C. § 1104(a)(1) states that "a fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries....*" (emphasis added). As the Court stated in *United States v. Hartwell,* 6 Wall. 385, 396, 18 L.Ed. 830 (1867), *quoted in United States v. Shreveport Grain & Elevator Co.,* 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932), "[i]f the language be clear it is conclusive." Here, the statutory language seems clear and conclusive: the Hospital's fiduciary duties lie only to the plan participants and their beneficiaries, not to the enrolled actuary for the plan. *See* Hutchinson, *The Federal Prudent Man Rule Under ERISA,* 22 Vill.L.Rev. 15, 31 (1976–77) ("The requirement that fiduciaries act solely in the interests of participants and beneficiaries arises from an overall duty of loyalty...."). Thus, we conclude that the Hospital, as a plan fiduciary, owes no duty to Metropolitan.

■ Second, Metropolitan argues that, even if the Hospital, as a single fiduciary, owes no duty to Metropolitan, the Hospital, as a co-fiduciary, can be liable to Metropolitan. Metropolitan relies on 29 U.S.C. § 1105(a) which provides that an ERISA fiduciary can be liable for another ERISA's fiduciary's breach if the first fiduciary participated in, enabled, or knew of the act constituting the breach.[1] But even if Metropolitan is an ERISA fiduciary—a question we need not and do not decide—ERISA creates no cause of action where the plan has not been damaged. As we have discussed, a fiduciary's liability is solely to plan participants and beneficiaries. Here, neither the plan nor the participants and

---

**1.** 29 U.S.C. § 1105(a) provides:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

beneficiaries of the plan have been damaged or harmed in any way. Rather, the participants and beneficiaries benefitted greatly.

The Hospital is the only party that has suffered damages; it has to pay more for the plan. Even if both the Hospital and Metropolitan were responsible for that harm—another question we need not and do not decide—we cannot see how any joint responsibility for those damages to the Hospital leads to a cause of action under ERISA. There simply has been no harm to the plan, its participants, or its beneficiaries.[2]

■ In summary, to the extent Metropolitan's co-fiduciary theory is correct, it does not apply to this case. To be sure, where an ERISA plan suffers losses and where the plan participants and beneficiaries have established a cause of action on their own behalf or on behalf of the plan assets against one fiduciary, that fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a). But in this case, no breach of fiduciary duties with respect to plan participants and beneficiaries can be established. Thus, the cotter pin has fallen out of Metropolitan's theory. ·

## III

■ Since this action is not governed by ERISA, we must return to the legal theories which do govern this case. The Hospital brought its suit against Metropolitan under common law principles. All of Metropolitan's arguments amount to nothing more than an allegation that the Hospital was contributorily negligent in following Metropolitan's advice. These allegations do not state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), but, rather, are "matter[s] constituting an avoidance or affirmative defense," Fed.R.Civ.P. (8)(c). As such, Metropolitan's contributory negligence arguments can be heard in the proceedings below. For these reasons,[3] the district court correctly dismissed Metropolitan's amended counterclaim and third-party complaint. Therefore, the district court's dismissal is

Affirmed.

---

**2.** Metropolitan also relies on 29 U.S.C. §§ 1109(a) and 1132(a)(2), (3). Section 1109(a) provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable *to make good to such plan any losses to the plan* resulting from each such breach and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

(emphasis added). But the very language of § 1109(a) emphasizes that no cause of action can be had for contribution or indemnity unless the plan suffers losses. Since the plan here suffered no losses. Metropolitan's reliance on § 1109(a) is unavailing.

> Section 1132(a) provides in pertinent part:
> A civil action may be brought—
>  . . . .
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

But § 1132 merely designates the various parties who have standing, under ERISA, to sue. This section does not create any right of action, but simply outlines civil actions with regard to violations of ERISA. Thus, even if Metropolitan were a fiduciary entitled to sue under § 1132, its cause of action must still be based on the other ERISA provisions relating to harm to a plan or its participants or beneficiaries. Since Metropolitan cannot show such harm, its reliance on § 1132 is unavailing.

**3.** We have carefully considered all of the other arguments of the parties not specifically discussed in this opinion. We find those arguments either wanting merit or insufficiently important to warrant extended discussion; their discussion would not have altered this result.