Barbara MUNOZ, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

No. 85–K–1300.

United States District Court, D. Colorado.

April 23, 1986.
As Amended May 30, 1986.

Andrew C. Littman, Stevens & Littman, Boulder, Colo., for plaintiff.

Alan Gary Dunn, Phelps, Hall, Singer & Dunn, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case presents an issue of first impression in this circuit on the pre-emptive effect of Erisa on a suit against a non-fiduciary administrator of a self-funded employee benefits plan. Plaintiff seeks damages for defendant's failure to provide medical insurance coverage under the employee benefit plan of the Storage Technology Corporation. Plaintiff premises her right to recovery upon breach of contract, negligence, strict liability and Erisa (Employee Retirement Income Security Act) 29 U.S.C. §§ 1001 et seq. The parties' presence in this forum under federal question and diversity jurisdiction, 28 U.S.C. §§ 1331 and 1332, respectively, is not disputed. This case is now before me on defendant's motion to dismiss for failure to join an

indispensible party pursuant to Fed.R. Civ.P. 19. In addition, defendant moves for an order of summary judgment per Fed.R.Civ.P. 56 dismissing all of plaintiff's claims because: (1) The doctrine of bad faith breach of an insurance contract is not applicable where there is no insurance policy; (2) Erisa pre-empts state law claims; (3) Extra-contractual compensatory and punitive damages are not recoverable under Erisa; and (4) Prudential is not a proper party defendant under Erisa. For the reasons set forth below, defendant's motions are granted in part and denied in part.

## I. BACKGROUND

While an employee of STC, plaintiff was covered for certain medical expenses under the "Medical Plan" section of the employee benefit plan established by STC. On October 3, 1984, plaintiff was diagnosed by Dr. Alan Stormo as needing non-cosmetic abdominoplasty surgery. On October 4, Dr. Stormo informed defendant of his diagnosis and sought a pre-surgery authorization. On about October 17, plaintiff was laid off by STC and notified that the Medical Plan would continue covering her until at least November 17, 1984.[1] Plaintiff was told by STC, however, that if she paid $250.00 her coverage would be extended to December 31, 1984. She remitted the $250.00. On October 23, 1984, Prudential acknowledged Dr. Stormo's request for a pre-determination of benefits and stated that plaintiff would be notified as soon as a coverage determination was made. Between October 4 and November 16, plaintiff made numerous inquiries as to when a coverage determination would be made. Defendant was unresponsive and evasive. On about November 17, defendant notified plaintiff that the contemplated surgery was a covered expense, but that actual benefits could not be determined because "each charge must be evaluated with regard to plan provisions and the patient's eligibility at the time of service". Surgery was performed

---

1. There is some confusion as to whether plaintiff's coverage expired on November 16 or November 17. This distinction is de minimus, and since these are defendant's motions, I will adopt as correct the dates supplied by plaintiff.

on December 4, 1984. Following surgery, STC returned to plaintiff her $250.00 check which was to have afforded her coverage until December 31 and informed her that her coverage had expired prior to the surgery. Defendant has failed to pay medical benefits for this surgery and a later surgery allegedly necessitated by the delay in having the first surgery performed. Defendant asserts that the medical expenses claimed by plaintiff were incurred after November 17, the date terminating her coverage under STC's benefits plan.

## II.

### MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSIBLE PARTY

In deciding whether to grant a Rule 19 motion, I must engage in a two step inquiry. *See, First National Bank of Strasburg v. Platte Valley State Bank,* 107 F.R.D. 120 (D.Colo.1985). First, I need to determine whether the person sought to be joined is a party necessary to the action. *Potter v. Continental Trailways, Inc.,* 480 F.Supp. 207 (D.Colo.1979). Under Rule 19(a)(2), a person is considered a necessary party to the action if:

> he claims an interest relating to the subject of the action and is so situated that disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest
> . . .

This determination must always be made on a case-by-case basis taking into account the special circumstances and facts in the case. *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.,* 564 F.2d 816 (8th Cir.1977). If they are not deemed necessary parties then the motion should be denied. If I conclude

that the person is a necessary party *and joinder is not possible,* the second step in my inquiry is triggered. *Platte Valley Bank,* 107 F.R.D at 122. Under Rule 19(b), if a necessary party cannot be joined,

> the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable. The factors to be considered by the court include: . . . whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

■ Defendant asserts that STC is a necessary and indispensable party and that their non-joinder is ground for dismissal. I disagree. I see no merit in defendant's contention that my determination of coverage issues without the presence of STC could substantially impair STC's ability to protect itself in subsequent litigation. STC is currently in the midst of a Chapter 11 bankruptcy. The automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, insulates STC from service of process. Assuming STC eventually were to become amenable to suit and judgment, STC would not be bound by the decisions of this court. STC's absence as a party to this action would preclude in any hypothetical future litigation the invocation of res judicata or collateral estoppel.[2] Any issues affecting the rights and liabilities of STC would have to be re-litigated.

Even if I were to grant defendant its contention that STC is a necessary party, I could not find that STC is indispensible. I believe that since dismissal would leave plaintiff without an adequate remedy, the balance of equities lie in favor of proceeding without STC. *See Id.* at 122.

---

**2.** Res judicata or collateral estoppel may only be invoked if the following four questions are answered in the affirmative:

> First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was there a final judgment on the merits? Third, was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? And, fourth, did the party

against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

*Rodriguez v. Bar-S Food Co.,* 567 F.Supp. 1241, 1244 (D.Colo.1983), *citing Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1974). Because STC is an Erisa fiduciary, the issues in any subsequent litigation will be distinct from those now before me.

Accordingly, defendant's motion to dismiss for failure to join an indispensible party is denied.

## III.

## MOTIONS FOR SUMMARY JUDGMENT

Summary Judgment is a drastic remedy which is appropriate only where there exists no genuine issues of material fact. The movant must show entitlement to summary judgment beyond all reasonable doubt. In order to determine the propriety of summary judgment, I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. Where different inferences can be drawn from conflicting affidavits, pleadings and depositions, summary judgment should not be granted. *United States, etc. v. Santa Fe Engineers, Inc.*, 515 F.Supp. 512, 514 (D.Colo.1981). However, an adverse party may not rest upon the mere allegations or denials of his pleading. His response, by affidavits or as otherwise provided by Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

### A. Whether Defendant is a Proper Party Defendant Under Erisa

A person is subject to suit under Erisa if he may be characterized as a fiduciary to an employee benefits plan. 29 U.S.C. § 1109(b). "Fiduciary" is specially defined in Erisa itself, 29 U.S.C. § 1002(21)(A), and in various rules and regulations promulgated thereunder.

Except as otherwise provided in subparagraph (B)[3], a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B)[4] of this title.

1002(21)(A)

Plaintiff asserts that, though not a named fiduciary, defendant's processing of claims for STC required an exercise of discretionary responsibility so as to render defendant amenable to Erisa suit. Defendant argues that its claims processing functions were void of any discretionary authority and were purely administrative. Because there is no material dispute as to the facts of defendant's claims processing activity, only its legal effect, this issue may be resolved as a matter of law and is appropriate for summary resolution.

Pursuant to 29 U.S.C. §§ 1031, 1133 and 1135, the Department of Labor has issued numerous interpretive regulations regarding Erisa. 29 C.F.R. § 2509.75–8, D–2 clarifies the significance of the distinction between discretionary and merely ministerial functions:

Q. Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to that plan:

(1) Application of rules determining eligibility for participation or benefits;

\* \* \* \* \* \*

(6) Calculation of benefits;

\* \* \* \* \* \*

(10) Processing of claims;

---

**3.** "Subparagraph (B)" concerns the fiduciary status of an investment securities advisor and is, therefor, not presently pertinent.

**4.** A person designated under 1105(c)(1)(B), considered a fiduciary per 1002(21)(A), is one other than a named fiduciary who is designated by a named fiduciary to carry out fiduciary responsibilities.

A: No ... a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

The benefits plan under which plaintiff seeks recovery was wholly self funded by STC. Defendant was not an insurer in the STC plan but rather a contractor under STC's and defendant's Administrative Services Agreement, effective January 1, 1984. Pursuant to this arrangement, defendant agreed to provide certain administrative services to STC. Defendant was involved solely in the processing of claims. Determinations of enrollment, claims eligibility and review of any claims processed by defendant, however, were expressly and solely left in the hands of STC. The structure and language of the administrative services agreement evinces a strict delineation between fiduciary and non-fiduciary functions. That STC and defendant contemplated defendant's isolation from any non-ministerial functions which could provide a basis for Erisa fiduciary liability is manifest in § I. *General Provisions* of the agreement which states that

It is understood that ... STC ... retains all final authority and responsibility for the Plan and its operation ...

The general provisions section also contains a "hold harmless clause", reiterating STC's and defendant's intent that STC was ultimately responsible for the administration of the plan.

The medical plan and the procedures designed to implement the plan were drafted and designed by STC prior to defendant's processing of claims under the administrative services agreement. Under the administrative services agreement, the functions allotted defendant were non-discretionary; defendant mechanically applied the STC-formulated rules and regulations to the particular claim before it. § I.A. of Exhibit B to the agreement provides that defendant "shall determine the amount of benefits payable for each ... claim received *in accordance with the provisions of the plan."* § I.B. of Exhibit B makes clear that defendant was not responsible for the denial of plaintiff's eligibility to receive benefits, the key issue in this suit:

*Determination of Eligibility* —(STC) ... shall determine a claimant's eligibility for benefits under the plan and notify Prudential of such eligibility when forwarding the claim to Prudential for processing.

While these contract provisions are highly compelling evidence as to whether defendant acted as a fiduciary, they are not dispositive. How, specifically, defendant conducted itself with respect to plaintiff's claim must be considered. Plaintiff contends that defendant's delay in confirming coverage indicates that defendant's processing of claims was a discretionary, fiduciary function; "it did have discretion insofar as it and only it could decide how quickly it would respond to [p]laintiff's request for confirmation of coverage". Plaintiff's supplemental brief at p. 4.

 While the discharge of purely ministerial tasks might require a degree of discretion, (such as the immediate prioritization of such tasks), this decision making is not the type upon which Erisa predicates fiduciary liability. Such discretion is inherent in even the most innocuous of clerical acts, including those specifically defined as being non-fiduciary in 29 CFR § 2509.75–8, D–2. As that section and 29 U.S.C. § 1002(21)(A)(1) indicate, it is a person's ability to make policy decisions outside of a pre-existing or separate framework of policies, practices and procedures which saddles that person with Erisa fiduciary liability. Plaintiff has offered no proof that her claim was handled by defendant in a fash-

ion inconsistent with the pre-existing guidelines established by STC.

29 CFR § 2560.503-1 states that

To the extent that benefits under an employee plan are provided or administered by an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more States, the claims procedure may provide for review of a decision upon denied claims by such company, service or organization. In such case, that company, service, or organization shall be the "appropriate named fiduciary" for purposes of this section. In all other cases, the "appropriate named fiduciary" for purposes of this section may be the plan administrator or any other person designated by the plan, provided that such plan administrator or other person is either named in the plan instrument or is identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials.

Plaintiff's citation of this regulation in support of her argument that defendant is a fiduciary is inappropriate. As the administrative services agreement takes pains to clarify, STC retained all authority to review claims disputes. As well, the plan itself, at § II, p. 20, sets forth specific review procedures which do not include defendant in any way. Rather, requests for review were to be sent to Galbraith and Green, (now known as "James Benefits"), an entity not a party to this action.

In *Gelardi v. Pertec Computer Corporation*, 761 F.2d 1323 (9th Cir.1985), the Ninth Circuit considered a case with some striking similarity to the one now before me. Pertec, like STC operated a wholly self-funded employee benefit plan. Self Insurance Programs, like defendant, was hired to administer the plan, but final authority regarding eligibility, as in the instant case, rested with Pertec. Finding that "Self performs only administrative functions, processing claims within a framework of policies, rules and procedures established by others", 761 F.2d at 1325, the appellate court upheld the district court's granting of summary judgment on the ground that Self was not an Erisa fiduciary.

Another instructive case is *Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183 (N.D.Ill.1981), wherein the plaintiff attempted to hold the defendant bank liable as an Erisa fiduciary because the bank, pursuant to a participation agreement similar to the instant administrative services agreement, was vested with decision making authority when the parties to the benefits plan were unable to resolve disputes within a reasonable time. This authority was far greater than the discretion to prioritize claims requests exercised by defendant in the present case. Recognizing that all exercise of discretion within the ambit of a distinct framework of procedures does not operate to trigger Erisa, the court held that the exercise of discretion at issue was "insufficient to constitute authority or control". 514 F.Supp at 1191. It follows that a far less important exercise of discretion is similarly insufficient to hold defendant liable under Erisa.

Accordingly, defendant's motion that it is not a proper party defendant under Erisa is granted.

## B. Whether Defendant May Be Liable for "Insurance Bad Faith"

Among other claims, plaintiff seeks recovery for defendant's alleged bad faith breach of the parties insurance contract. Defendant moves that this claim be dismissed because an essential element of the "bad faith" doctrine is the existence of a contract of insurance. It is not disputed that the plaintiff and defendant were not parties to an insurance contract. Though this precise issue has not been addressed by the Colorado courts, their acceptance of an "insurance bad faith" cause of action is premised upon the notion that the parties are bound by a contract of insurance. In *Farmers Group, Inc., v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984), the Supreme Court of Colorado noted that

The duty of the insurer to act in good faith when dealing with its insured is characterized in many jurisdictions as a duty implied in law as *a covenant of the insurance contract* ... The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is *grounded upon the special nature of the insurance contract* and the relationship which exists between the insurer and the insured.

(Citations omitted and emphasis added.)

■ Plaintiff has presented no authority for the proposition that an insurance bad faith claim may lie where no insurance contract exists. As well, my research has failed to uncover any such cases. Plaintiff rebuts defendant's motion that the bad faith claim be dismissed by stating, "at the very least, plaintiff is a third party beneficiary of the contract between STC and Prudential". The administrative services agreement, however, of which plaintiff *is* arguably a third party beneficiary, was not a contract of insurance. This argument is unavailing.

Accordingly, defendant's motion for summary judgment that the doctrine of insurance bad faith does not apply to this action is granted.

### C. *Whether Plaintiff's State Law Claims are Pre-empted by Erisa*

Erisa delineates its preemption provisions in four subsections of § 1144. Subsection (a) provides that all state laws are superseded in so far as they "relate to" employee benefit plans. This sweeping language is limited by subsection (b)(2)(A), Erisa's savings clause which excludes from pre-emption state laws which regulate insurance. The savings clause is, in turn, limited by subsection (b)(2)(B), the "deemer

clause", which provides that self-insured pension plans shall not be deemed insurance companies subject to state law. Finally, subsection (d) prevents Erisa from impairing or superseding any other federal law. *See Eversole v. Metropolitan Life Insurance Co.*, 500 F.Supp 1162, 1165 (C.D. Cal.1980).

■ I have granted defendant's motion for summary judgment that it is not an Erisa fiduciary. Therefore, it is not amenable to suit under Erisa. The threshold issue is whether Erisa, and its pre-emption provision, are presently germane. The pre-emptive effect of Erisa on a suit against a non-fiduciary defendant who administered a wholly self-funded employee benefits plan is an issue of first impression in this circuit and has not been addressed by the Supreme Court.[5] I hold that since Erisa does not regulate non-fiduciary conduct, it does not pre-empt plaintiff's state common law claims.

Erisa's statement of intent provision, and interpretive case law, leave no doubt that Erisa was designed to remedy improprieties with respect to a benefits plan committed by statutorily defined fiduciaries. § 1001(b) states that

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, *by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans,* and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

---

**5.** The only case I've found even tangentially addressing this issue is *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.1985). In that case the employer, Pertec, and its outside plan administrator, Self, were both deemed non-fiduciaries. The court's reasoning that a plan administrator engaging in purely ministerial functions is not a fiduciary was well conceived; I cited it in the text of this opinion for

that proposition. However, without considering the nature of the pre-emption doctrine or the pre-emptive effect Congress intended to give Erisa over issues outside of the Act's ambit, the court in an exercise of *ipse dixit* stated "the only causes of action Gelardi has are under Erisa. 29 U.S.C. § 1144(a)". 761 F.2d at 1324. I do not find *Gelardi's* treatment of the pre-emption issue to be of any use.

*See also,* 1109(a) [6]

These sections, along with other provisions and the tenor of Erisa as a whole, have led courts to hold that the Erisa remedies apply only against fiduciaries. As the first part of this opinion discusses, a non-fiduciary is simply not within the scope of the Act. In a leading Erisa pre-emption case, *Russel v. Mass. Mutual Life Ins. Co.,* 722 F.2d 482, 488 (9th Cir.1983), *rev'd on other grounds,* 473 U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the 9th Circuit elucidated the scope and purpose of Erisa:

> Erisa ... provides a federal cause of action for the breach of certain *fiduciary* duties by those administering benefit plans ... Thus a beneficiary or participant may ... bring a cause of action under 1109(a) for the breach by a *fiduciary* of any responsibilities, obligations, or duties imposed by the Act ... The Act imposes a comprehensive scheme of *fiduciary* duties and responsibilitiess for managing and administering plan funds ... Protection from *fiduciary* conduct that violates these duties is necessary to implement Congress' express policy of imposing strict *fiduciary* obligations ...

(Emphasis added.) Erisa clearly only involves the regulation of fiduciary conduct relating to employee benefit plans. It does not purport to regulate non-fiduciary conduct such as that presently at issue.

Congressional intent to divest states of legislative and judicial power inherent in their limited sovereignty is not easily inferred:

> [P]re-emption of state law by federal statute or regulation is not favored in the absence of persuasive reasons—either that the nature of the regulated subject matter *permits no other conclusion or that Congress has unmistakingly so ordained.*

*Alessi v. Roybestor—Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402, 416, (1981) (emphasis added). In *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed 2d 258 (1981), the Court stated that:

> When Congress has chosen to legislate pursuant to its constitutional powers, then a court must find local law pre-empted by federal regulation when ever the challenged state statute[7] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

I find that plaintiff is not pre-empted from asserting her state law claims because Congress has *not* unmistakingly so mandated and because allowing her claims is not in derogation of Congress' objectives in enacting Erisa. As noted above, this is not even an Erisa case.

I am not unmindful of the open-ended "relate to" language of the Act's pre-emption provision, § 1144(a), nor the expansive interpretation courts have given this language. However, the broad pre-emption language is limited by the Act's declarations of purpose which indicate that Erisa was intended to combat only fiduciary misconduct. I do not find it to be Congress' intent to allow one who has willfully insulated itself from Erisa liability to violate its common law duties with impunity. I do not find it to be Congress' intent to pre-empt state common law liabilities where there is no federal regulation to fill the void. In this vein, the state common law invoked by plaintiff does not denigrate the objectives of Erisa because regulation of non-fiduciary conduct is not an Erisa objective.

---

**6.** 1109(a) states that

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary ...

**7.** While the instant case involves state common law rather than statutory law, the applicability of this language is in no way vitiated.

The cases cited by defendant in its well conceived arguments afforded Erisa broad pre-emptive effect, but only with respect to the conduct of fiduciaries. Hence—*like Erisa itself*—they are inapplicable.

Accordingly, defendant's motion for a summary judgment that Erisa pre-empts state law claims is denied.

### D. Whether Extra-Contractual Remedies are Recoverable Under Erisa

Because I've held that this is not an Erisa case, and that Erisa does not pre-empt state law claims, this motion is denied as moot.

It is hereby ORDERED that:

A) Defendant's motion to dismiss for failure to join an indispensible party is denied;

B) Defendant's motion for summary judgment that:

1. Plaintiff's Erisa claim be dismissed is granted;
2. Plaintiff's "insurance bad faith" be dismissed is granted;
3. Plaintiff's state common law claims be dismissed because of pre-emption is denied;
4. Plaintiff's claim for extra-contractual relief be dismissed is denied as moot.