CAPITAL MERCURY SHIRT CORP., Plaintiff,

v.

EMPLOYERS REINSURANCE CORP., USAble Insurance Company, Defendants.

Civ. No. 90–3017.

United States District Court, W.D. Arkansas, Harrison Division.

Oct. 1, 1990.

Michael G. Thompson, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff.

Dan F. Bufford, Laser, Sharp, Mayes, Wilson, Bufford & Watts, Allan W. Horne, Davidson, Horne & Hollingsworth, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case was filed on March 16, 1990. Plaintiff alleges that this court has jurisdiction by virtue of 28 U.S.C. § 1332 (1985). Plaintiff, Capital Mercury Shirt Corporation, has approximately 1500 employees located in the State of Arkansas for whom it provides health and accident benefits on a shared cost basis. The employee benefit program is funded 50% by Capital and 50% by employee contributions.

In June, 1988, the plaintiff received a proposal from USAble to administer the plaintiff's employee benefit program. As part of the proposal, USAble was to acquire medical reinsurance coverage for plaintiff. Plaintiff accepted USAble's proposal and entered into an Administrative Services Agreement with it on September 1, 1988. Subsequently, Employers Reinsurance Corporation issued an "Aggregate Excess Medical Expense Policy" covering the period from September 1, 1988, through September 30, 1989. Plaintiff contends that "[p]ursuant to the policy, Employers undertook, for a valuable consideration, to reimburse and indemnify the plaintiff for all claims paid by it to its employees and their families in excess of the maximum amounts agreed to by Employers."

On November 16, 1989, USAble, acting pursuant to its administrative services agreement, wrote to Employers requesting reimbursement to the plaintiff in the sum of $363,197.49. Plaintiff alleges this amount represents an overpayment it made in satisfaction of employees' health and accident claims during the policy period.

Plaintiff initially named only Employers as a defendant and requested judgment in

the amount of $363,197.49, plus interest. Additionally, plaintiff sought 12% penalty and a reasonable fee for its attorneys pursuant to Ark.Code Ann. § 23–79–208 (1987). Employers answered contending that under the policy provisions it had the right to amend certain scheduled items because USAble had supplied inaccurate and incomplete information concerning plaintiff's prior claims experience. As a result of this allegation, Capital sought and was granted leave of the court to name USAble Insurance Company as an additional defendant. An amended complaint was filed on June 27, 1990. In this pleading Capital asserts that if Employers prevails on its defense then "USAble was guilty of negligence in fulfilling its responsibilities to the plaintiff in its undertaking to acquire medical reinsurance coverage in favor of the plaintiff by providing inaccurate, misleading and incomplete information to Employers." Additionally plaintiff asserts that such actions on USAble's part, if true, would also constitute a breach of USAble's fiduciary duty in connection with Capital's employee benefit plan.

In its answer filed July 31, 1990, USAble alleged that Capital's claim is subject to federal preemption pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Thus, USAble contends "plaintiff is not entitled to collect interest, attorneys' fees, the 12% statutory penalty or any other remedy or penalty based on state law or statutes because ERISA provides the exclusive remedy for plaintiff's claim." USAble further denied that plaintiff was entitled to a jury trial under the ERISA provisions.

Because resolution of the preemption issue could significantly alter the procedures utilized in the trial of this case, the court, noting the issue of ERISA preemption had been raised by USAble in its answer, wrote the parties on August 7, 1990, requesting that this issue be briefed. In response to the August 7 letter, the court has received letter briefs on behalf of the plaintiff and USAble. Employers advised that it was in agreement with the position taken by USAble.

Capital contends that ERISA does not govern its action. It is alleged that as against Employers this is a simple contract claim only inferentially related to an employee benefit plan with the sole issue being whether, under the contract of reinsurance, Employers is indebted to Capital for the payments made to its employees under the health and accident program. Capital points out that it is the insured under the policy *not* the health and accident benefits program or Capital's employees.

Capital argues that it is not a plan "participant", "beneficiary" or "fiduciary," or a plan administrator which has improperly denied benefits due under ERISA. In its response to USAble's arguments Capital states:

> USAble's letter brief goes to great lengths to characterize Employers Reinsurance Corp's Reinsurance Policy as part of the ERISA plan covering Capitals' employees. Regardless of whether that characterization is correct, the issue of ERISA Preemption turns on the fact that Capital is neither a "participant" nor "beneficiary" under Capital's ERISA plan. Since Capital is neither a "participant" or "beneficiary" of the plan, its suit against Employers Reinsurance Corp. is not within the preemptive realm of ERISA and is accordingly governed by state law.

Capital contends "[i]t is merely seeking insurance benefits due it, as the employer, under a policy of insurance purchased by it and of which it is the named insured, for payments made to fund its employee's health and accident benefit claims." Capital's claim against "USAble is for negligence and breach of contract should it be found that USAble failed to properly acquire reinsurance coverage from Employers which it obligated itself to acquire."

In response USAble argues that the cause of action is preempted and that the stop-loss policy is merely an alternative funding mechanism designed to protect against or provide coverage for an unusually high amount of claims. As such, USAble states the stop-loss policy is an integral

part of the plan and is expressly incorported in the plan. Finally, USAble states that ERISA preemption "does not depend upon who is suing or being sued, but rather, upon whether the state law claims asserted 'relate to' an ERISA Plan." The court has been provided a copy of the plan and the policy at issue.

It is undisputed that the plan at issue is an employee welfare benefit plan within the meaning of ERISA. 29 U.S.C. § 1002(1) (1985). Since ERISA's enactment courts and litigants have struggled to determine what is and what is not an ERISA governed case. Clearly any suit brought by a participant or a beneficiary to enforce their rights under the plan or to collect benefits under the plan comes within the preemptive scope of ERISA. Although many find it incomprehensible that Congress could have meant to preempt what were at one time simple contract actions, there appears to be little doubt that this was ERISA's aim and is in fact the law. ERISA was enacted to:

> [P]rotect ... participants in employee benefit plans and their beneficiaries, by requiring disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing adequate remedies; sanctions and ready access to the Federal courts.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987).

Unfortunately, once one diverges from this area there is indeed a "morass" in the present state of the law. Given the myriad of circumstances surrounding disputes concerning "employee welfare benefit plans" this is hardly surprising. As one court aptly remarked "[t]he ERISA quicksand is fast swallowing up everything that steps in it or near it. This morass serves as the stage for a theater of the absurd." *Jordan v. Reliable Life Ins. Co.*, 694 F.Supp. 822, 827 (N.D.Ala.1988) ("[T]his court proceeds ... into unchartered seas without a compass."), *later proceeding*, 716 F.Supp.

582 (N.D.Ala.1989) ("ERISA may have swallowed up, like a 'black hole,' even this garden variety claim."). Nevertheless, the consensus appears to be that "ERISA preemption extends beyond circumstances involving the processing of claims...." *Settles v. Golden Rule Ins. Co.*, 715 F.Supp. 1021, 1023 (D.Kan.1989).

Capital's arguments have their genesis in the civil enforcement section of ERISA. Section 1132 specifies the persons empowered to bring a civil action. 29 U.S.C. § 1132. Under this section a civil right of action is granted to "participants," "beneficiaries," "fiduciaries," and the Secretary of Labor. The plan sponsor or employer is not listed as an entity empowered to bring action. Therefore, Capital points out that as an employer its claims would not be cognizable under ERISA and, thus, are not preempted. Additionally, by relying on *Munoz v. Prudential Ins. Co.*, 633 F.Supp. 564 (D.Colo.1986), Capital appears to also argue that ERISA's preemptive scope does not reach the conduct of non-fiduciary defendants.

In *Pilot Life* the Supreme Court stated: [T]hat the civil enforcement provisions of ERISA § 502(a) [are] the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). The terms participant and beneficiary have been broadly construed to allow "potential" or "former" participants and beneficiaries to be included. *See, e.g., Smith v. Electronic Data Sys. Corp.*, 657 F.Supp. 1242, 1243 (D.Colo.1987) (former employee); *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755 (5th Cir.1990) (former employees). In light of § 1132 it has been stated that a non-fiduciary employer lacks standing to sue. *See Carl Colteryahn Dairy, Inc. v. Western Teamsters & Emp. Pension Fund*, 847 F.2d 113, 119 (3d Cir.1988), *cert. denied*, 488 U.S.

1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local No. 229 Welfare Fund*, 764 F.2d 147, 153 & n. 3 (3d Cir.1985) (holding that "§ 1132 must be read narrowly and literally," and implying, *in dicta*, that a non-fiduciary employer does not have standing to sue); *Tuvia Convalescent Center v. National Union of Hosp. & Health Care Employees*, 717 F.2d 726, 729–30 (2d Cir.1983). *But see Stone & Webster Engineering Corp. v. Ilsey*, 518 F.Supp. 1297 (D.Conn.1981), *aff'd*, 690 F.2d 323 (2d Cir.1982) (employer could challenge statute even though not a participant).

■ However, there appears to be no reason that an employer cannot also be a fiduciary. *See United States Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission*, 669 F.2d 124 (3d Cir.1982) (Employer can be and often is a fiduciary). Under ERISA a fiduciary is defined as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (Subsection (B) provides an exception not applicable in this case). Although Capital asserts that it is not a fiduciary, the documents before the court indicate Capital has retained sufficient authority to be a fiduciary under ERISA. *Administrative Services Agreement* at IV(G) (retains right to final decision on rejected claims), V(A) (retains final authority and responsibility for the Program and its operation). The Plan Administrator is identified as Mr. Bill Clark, Capital Mercury Shirt Corporation. Plan, General Information (5). Thus Capital occupies in this instance two roles, *i.e.* employer and ERISA fiduciary. *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.1985).

Section 1132(a)(3) allows a civil action to be brought by a fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...." Thus, the fiduciaries cause of action must stem from the terms of the plan or from the statutory provisions of ERISA. As one court noted:

> Section 1132(a)(3) contemplates 'fiduciaries' suing to enforce the terms of 'the plan,' meaning the terms of the plan regarding which they have a fiduciary duty. Indeed, this interpretation is also compelled by the fact that one's status as fiduciary under ERISA is dependent upon one's relationship to a particular plan. ERISA provides that "a person is a fiduciary with respect to a plan to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan or ... disposition of its assets...." 29 U.S.C. § 1002(21)(A).

*Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 (3d Cir.1985).

Although we have concluded Capital is a plan fiduciary, it does not appear that the cause of action asserted against Employers falls within the language of § 1132(a)(3). Capital is not seeking to enforce the terms of the plan or to assert a violation of the ERISA statutory provisions. *See also Quigley v. UNUM Life Ins. Co.*, 688 F.Supp. 80 (D.Mass.1988); *Munoz v. Prudential Ins. Co. of America*, 633 F.Supp. 564, 569 (D.Colo.1986) (non-fiduciary defendant not proper party defendant under ERISA) ("The provision of contractual benefits alone will not create fiduciary obligations under ERISA where an insurer exercises little or no discretion in relation to an ERISA plan."), *aff'd without op.*, 887 F.2d 258 (1st Cir.1989).

USAble argues that the stop-loss policy is an integral part of the plan and is specifically incorporated in the plan. The policy states "[t]his policy applies to loss paid by you during the policy period for medical benefits provided under the plan." In this regard the court is referred to case law indicating the purchase of a stop-loss policy acts to convert a self-insured plan to an "insured" plan for the ERISA purposes. For instance, in the *Auto Club* case the court concluded that the employer's purchase of a stop-loss policy made an otherwise self-insured Plan "insured" for purposes of applying the deemer clause. *Auto Club Ins. Ass'n v. Mutual Savings and Loan Ass'n*, 672 F.Supp. 997, 1000 (E.D. Mich.1987). This was true even though "the Plan itself does not purchase insurance and the Plan participants have no direct rights under the policy." This analysis was made in terms of whether a specific state statute was preempted. *But see Moore v. Provident Life & Accident Ins. Co.*, 786 F.2d 922, 927 (9th Cir.1986); *Drexelbrook Eng'g Co. v. Travelers Ins. Co.*, 710 F.Supp. 590 (E.D.Pa.1989) (ERISA self-funded plans which purchase stop-loss or excess insurance remain self-funded), *aff'd without opinion*, 891 F.2d 280 (3d Cir. 1989).

The cases relied on by USAble do not regard the stop-loss policy as an integral part of the plan. Rather these cases merely examined the possible impact on the plan of the purchase of this insurance. Because we are not regarding the stop-loss policy as part of the plan, the cause of action asserted against Employers does not fall within the language of § 1132(a)(3). The question then becomes whether the claim asserted against USAble falls within the scope of § 1132(a)(3).

■ As a general rule, fiduciary duties under ERISA are owed to participants and beneficiaries only. *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 119 (3d Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). *See also Alton Memorial Hospital v. Metropolitan Life Ins.*

*Co.*, 656 F.2d 245, 249 (7th Cir.1981); 29 U.S.C. §§ 1101–1114 (1985). Here Capital has asserted that it rather than the plan beneficiaries or participants was injured by the alleged misconduct of USAble. The participants and beneficiaries received payment under the terms of the plan. It is Capital that seeks reimbursement under the stop-loss policy. Thus, it does not appear that Capital has alleged USAble breached its fiduciary obligations in connection with the plan. Therefore, the claim asserted is not a breach of fiduciary duty claim. *See Carl Colteryahn Dairy*, 847 F.2d at 119.

■ Having decided that Capital's claims are not cognizable under § 1132 does not necessarily end our inquiry; it must still be determined whether ERISA, nevertheless, preempts Capital's claims. ERISA's preemption provision states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and sub-chapter III of this chapter *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.*

29 U.S.C. § 1144(a) (emphasis added).

■ The Supreme Court has broadly interpreted the "relate to" language because Congress intended the regulation of employee benefit plans to be exclusively a federal concern. Thus, "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is preempted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). This preemptive effect extends to state common law claims as well as state statutory claims: *Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1552.

■ The preemption clause is modified by the savings clause and the deemer clause. The savings clause states nothing in the preemption clause "shall be construed to exempt or relieve any person from any law of any state which regulates insurance." 29 U.S.C. § 1144(b)(2)(A) (1985). "[O]nly laws specifically directed

toward the insurance industry are exempt from ERISA preemption." *Baxter v. Lynn,* 886 F.2d 182, 185 (8th Cir.1989), *citing, Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). The deemer clause provides that ERISA plans shall not "be deemed to be an insurance company or other insurer . . . for purposes of any law of any state purporting to regulate insurance companies." 29 U.S.C. § 1144(b)(2)(B) (1985).

These clauses read together will only "protect from preemption state insurance laws that indirectly regulate insured plans." *Auto Club Ins. Ass'n v. Mutual Sav. & Loan Ass'n,* 672 F.Supp. 997, 999 (E.D.Mich.1987), *citing, Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). "In order to be 'saved,' then, the law must regulate insurance, any regulation of the Plan must be indirect, and the Plan must be insured, meaning by an independent insurer rather than self-insurance." *Auto Club Ins. Ass'n v. Mutual Sav. & Loan Ass'n,* 672 F.Supp. 997, 999 (E.D.Mich.1987). *See also Baxter v. Lynn,* 886 F.2d 182, 184 (8th Cir.1989). Therefore, analysis of ERISA's preemptive scope generally requires a three-step analysis.

> First, do the state laws relate to an employee benefit plan? Second, do the state laws regulate insurance, banking, or securities so that the savings clause precludes pre-emption by ERISA? Third, does the deemer clause prevent the Plan or Trust Fund from being an insurance company?

*Moore v. Provident Life & Accident Ins. Co.,* 786 F.2d 922, 926 (9th Cir.1986).

The difficulty in analyzing the present situation stems from the fact that the preemption clause appears to be broader than the civil enforcement provisions. Given the apparent conflict between § 1144 and § 1132 courts have developed a variety of methods to deal with the situations that fall into this "gap."

First, several courts have filled this gap by "creating" an area of federal common law of pension plans. *See, e.g., Carl Colteryahn Dairy, Inc. v. Western Pennsyl-*

*vania Teamsters & Employers Pension Fund,* 847 F.2d 113 (3d Cir.1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943, 948 (D.Del.1985), *later proceeding,* 668 F.Supp. 893 (D.Del. 1987), *aff'd in part and vacated in part,* 850 F.2d 1028 (3d Cir.1988). These courts have largely relied on equitable principles to develop rules of law for cases in which ERISA furnishes no answer. In *Northeast Dept. ILGWA* the court stated, "the absence of an express statutory grant of jurisdiction in § 1132 of ERISA is . . . irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. § 1331(a)." *Northeast Dept. ILGWA v. Teamsters Local U. of No. 229,* 764 F.2d 147, 155 (3d Cir.1985), *citing, Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (There exists a federal common law of nuisance separate from and coexisting with the congressional scheme regulating interstate water pollution.).

Second, some courts have found a particular cause of action to be preempted by ERISA even though this left the aggrieved party with no remedy. *See, e.g., Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 756–758 (5th Cir.1990) ("We do not decide whether ERISA would provide relief on the facts of this case. Any remedy that does exist, however, must come within that exclusively federal scheme of pension regulation."), *reh. denied,* 1990 WL 7985, 1990 U.S.App. LEXIS 6390 (5th Cir.1990); *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir.1989) (Power to create federal common law "extends only to areas which federal law preempts but does not address." "Claims of promissory estoppel are not cognizable. . . .").

Finally, some courts have found that the broad preemption language is limited by the act's purpose and its civil enforcement provisions. In this vein, it has been found that nonfiduciaries are simply not within the scope of the Act. In *Munoz v. Prudential Ins. Co.,* 633 F.Supp. 564 (D.Colo.1986), the court held that ERISA does not regulate and does not preempt state common

law claims against nonfiduciary defendants.

Specifically, the court stated:

I do not find it to be Congress' intent to preempt state common law liabilities where there is no regulation to fill the void. In this vein, the state common law invoked by plaintiff does not denigrate the objectives of ERISA because regulation of nonfiduciary behavior is not an ERISA objective.

*Munoz*, 633 F.Supp. at 571. *See also Southern California Meat Cutters Unions & Food Employers Pension Trust Fund v. Investors Research Co.*, 687 F.Supp. 506 (C.D.Cal.1988); *Isaacs v. Group Health, Inc.*, 668 F.Supp. 306 (S.D. N.Y.1987). In *So. Cal. Meat Cutters Unions* the court noted, "[i]t appears that although the preemptive clause has been interpreted broadly, the purpose of the preemptive clause is to provide uniform federal laws and access for those causes of action for which ERISA provides remedies." *So. Cal. Meat Cutters Union*, 687 F.Supp. at 509–10.

In *So. Cal. Meat Cutters Union* the nonfiduciary defendant was alleged to be in a conspiracy with an ERISA fiduciary both of whom harmed the plan. The court found this to be a crucial distinction in the analysis of existing case law. However, the court rejected this distinction noting that "nowhere in the statute is there an indication that Congress intended only certain kinds of nonfiduciary behavior to fall within the scope of federal, as opposed to state, regulation". *Id.* at 508.

In attempting to reconcile the remedial section of ERISA, § 1109, with the preemption section, § 1144, the court noted:

If § 1144 is construed broadly, to preempt state law claims against nonfiduciaries, then the logical conclusion is that nonfiduciary conduct is regulated by ERISA so long as it "relates to" an employee benefit plan even though ERISA does not expressly provide a remedy for nonfiduciary misconduct and expressly provides for no liability in the case of a fiduciary's breach of duty that occurs before becoming or after ceasing to be a fiduciary. If, on the other hand, § 1109 is construed to provide liability only of fiduciaries, as a lateral interpretation implies, the reasonable conclusion is that ERISA preemption was only intended to go as far as the remedies for which ERISA provides, *i.e.* fiduciary misconduct.

*Id.* at 509. The court further noted:

It seems that Congress implicitly intended for the narrowness of § 1109 to outweigh the apparent breadth of § 1144. The overall congressional intent behind the creation of ERISA was:

... to 'protect ... plan participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts'.

§ 2, as set forth in 29 U.S.C. § 100[1](b). In order to carry out its goal of protecting employee benefit plans, their beneficiaries and their participants, Congress enacted § 1109. Because § 1109 is narrow regarding to whom and what it applies, it is apparent that Congress felt that regulating fiduciaries, those individuals who owe the highest standard of care to the plans and who have discretionary control over the assets of the plans, would provide adequate protection of employee benefit plans. Under § 1109, a fiduciary who breaches the high standard of care owed to the plan is personally liable to restore the plan to the position it would be in absent the breach of duty. The fact that ERISA is a comprehensive statute and yet does not provide a remedy for nonfiduciary misconduct is a good indication that Congress did not intend to regulate such behavior, but rather, that Congress believed regulation of fiduciary behavior would sufficiently protect benefit plans. Further support for this conclusion can be found in § 1109(b), which precludes

liability for breaches of fiduciary duty occurring before becoming and after ceasing to be a fiduciary. If such a fiduciary cannot be liable, could Congress have intended for nonfiduciaries to be liable?

The court finds this analysis persuasive and equally applicable to the case at hand. In this case, Capital's claims do not fall within the express jurisdictional provisions, § 1132, of ERISA. Thus, ERISA by its terms does not authorize federal jurisdiction over this suit. We decline to imply such a cause of action or to create a body of federal common law under § 1331. Having found that Capital's claims are not cognizable under § 1132 we hold that they are not preempted by ERISA.