**CARL COLTERYAHN DAIRY, INC.,
Appellant/Cross Appellee,**

v.

**WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS PENSION FUND, American Benefit Corporation, Melvin M. Brooks, C.P.A., Frank Stokes, individually and as agent of American Benefit Corporation, Leon B. Wilneff, individually and as agent of American Benefit Corporation, Thomas L. Fagan, W.F. Hardy, James H. Hutchinson, Jr., Samuel A. Montani, Charles E. Salvatore, Joseph E. Zaucha, Richard R. Peluso, Raymond H. Baker, individually and as Trustees of the Western Pennsylvania Teamsters Employers Pension Fund, Appellees.**

**Appeal of The WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS PENSION FUND and its individually named Trustees, Thomas L. Fagan, W.F. Hardy, James H. Hutchinson, Jr., Samuel A. Montani, Charles E. Salvatore, Joseph E. Zaucha, Richard R. Peluso, and Raymond H. Baker, Appellees/Cross Appellants.**

Nos. 87–3262, 87–3295.

United States Court of Appeals,
Third Circuit.

Argued Nov. 3, 1987.

Decided May 31, 1988.

Opinion on Denial of Rehearing and Rehearing En Banc July 25, 1988.

engage in improper activities in future dealings with the Territorial Court. Such matters are for another day.

114

Richard B. Sandow (argued), Jones, Gregg, Creehan and Gerace, Pittsburgh, Pa., for appellant/cross appellee.

Henry M. Wick, Jr., Charles J. Streiff (argued), Vincent P. Szeligo, Wick, Streiff, Meyer, Metz & O'Boyle, David M. Neuhart, Dickie, McCamey and Chilcote, P.C., David L. Beck, Weis and Weis, Pittsburgh, Pa., for appellees/cross appellants.

Before SLOVITER, BECKER and COWEN *, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Plaintiff Carl Colteryahn Dairy, Inc. ("Colteryahn") withdrew as a contributing employer to the Western Pennsylvania Teamsters and Employers Pension Fund ("Western Pennsylvania Fund" or "Fund"), a multiemployer pension plan, whereupon the Fund imposed a withdrawal liability assessment under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1982). Colteryahn challenged the assessment by suing the Fund, its trustees, and its accountants and actuaries in the district court for the Western District of Pennsylvania, alleging that: (1) the defendants had fraudulently induced Colteryahn to accede to a merger of the Fund with another plan to which Colteryahn belonged through a series of misrepresentations and concealments that violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982), and directly led to the improper assessment; (2) the Fund had improperly calculated the assessment because of an erroneous interpretation of 29 U.S.C. § 1391 (methods for computing withdrawal liability); and (3) the defendants had breached certain state common law contract and tort duties. On motion of the Fund, the district court dismissed the complaint for lack of subject matter jurisdiction, holding that the federal claims must first proceed to MPPAA arbitration and that the court thus lacked pendent jurisdiction over the state law claims. Colteryahn appealed, and the Fund and its trustees cross-appealed.

Colteryahn contends that its fraud claim is not cognizable by a MPPAA arbitrator because the claim does not fall within the specific statutory provisions reserved for arbitral resolution, and that its improper calculation claim is a pure statutory interpretation question for which arbitration is unnecessary. The Fund rejoins that the fraud claim is really a claim for breach of fiduciary duty under 29 U.S.C. § 1132 which Colteryahn has no standing to bring, and that the improper calculation claim falls squarely within the statutory provisions expressly reserved for arbitration. On its cross-appeal, the Fund contends that the district court should have declared the state law claims preempted by ERISA, rather than dismissing them for lack of jurisdiction.

We will reverse the district court's dismissal of the fraud, misrepresentation and concealment counts for several reasons. First, we conclude that this is not the type of technical calculation issue that Congress explicitly reserved for MPPAA arbitration. Second, we determine that the district court had subject matter jurisdiction over these claims under 29 U.S.C. § 1451. Third, we find that Colteryahn has alleged a violation of either MPPAA's merger regulations, 29 U.S.C. § 1411, or the federal common law of pension plans. Determining a question of first impression, we hold that under this federal common law, which we are authorized by ERISA to develop, a defrauded employer has a cause of action for the return of any sums that were fraudulently assessed by a pension plan.

We will affirm the district court's order insofar as it refused to decide the improper calculation claim, because we agree that Colteryahn must first submit this claim to arbitration under 29 U.S.C. § 1401; however we will remand so that the court can stay, rather than dismiss, the claim. Finally, on the cross-appeal, given our holding that a federal question remains within the district court's jurisdiction, we will reverse the district court's dismissal of the state

---

* At the time this case was argued, Judge Cowen was a United States District Judge for the District of New Jersey sitting by designation. On November 16, 1987 he entered on duty as a United States Circuit Judge for the Third Circuit.

law claims and remand for a determination of whether those claims are preempted by ERISA.

## I. STATUTORY BACKGROUND

The Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1453, was Congress' response to the growing problem of financial insolvencies of multiemployer pension plans. The problem was caused in large part by the ease with which employers could withdraw from such plans, often leaving those plans starving for funds. *See* H.R.Rep. No. 869, 96th Cong., 2d Sess. 54–55, 60, 67, 73, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2922, 2923, 2928, 2935, 2941.[1] Congress intended MPPAA to discourage such withdrawals and thus ensure the solvency of such plans. *See United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 130 (3d Cir.1986), *aff'd by an equally divided Court sub nom. Pension Benefit Guar. Corp. v. Yahn & McDonnell, Inc.,* — U.S. ——, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). The heart of the Act is its requirement that withdrawing employers pay a substantial withdrawal liability sum to the pension plan, a sum to be calculated without regard either to the net worth of the withdrawing employer or to the continued viability of the plan itself.[2]

At bottom, an employer's withdrawal liability is essentially equal to the employer's allocable share of the plan's unfunded vested benefits, subject to certain adjustments, *see* 29 U.S.C. § 1381(b) (1982). An employer's allocable share of these benefits is based primarily on the employer's proportionate share of contributions made to the Fund. *See, e.g.,* 29 U.S.C. § 1391(b) (1982 & Supp. III 1985). The Act provides a series of complex formulas by which a withdrawal liability sum is to be calculated. *See* § 1391.[3] Given the complexity of the calculations and the many technical issues that must be addressed to assess a bottom line liability, *see* 29 U.S.C. §§ 1381–1399, Congress has created a system of arbitration designed to resolve most disputes over such determinations. *See* 29 U.S.C. § 1401 (1982). Those disputes that "concern[ ] a determination made under sections 1381 through 1399 of [title 29]" may ultimately be heard in court upon review of an arbitration proceeding, 29 U.S.C. § 1401(a)(1);[4]

---

**1.** *See also Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* — U.S. ——, 108 S.Ct. 830, 834, 98 L.Ed.2d 936 (1988) ("In its 1980 amendments to ERISA, Congress ... was primarily concerned about the burden placed upon the remaining contributors to a multiemployer fund when one or more of them withdraw. In response to this concern Congress enacted an elaborate provision imposing 'withdrawal liability' on such withdrawing employers." (footnotes omitted)).

**2.** In a more extended discussion of the history and requirements of MPPAA, we explained that [p]rior to MPPAA, 29 U.S.C. § 1381 *et seq.* (1982), an employer who withdrew from a pension plan incurred a contingent liability: if a multiemployer plan terminated within five years following an employer's withdrawal, the employer was liable to the [Pension Benefit Guaranty Corp.], but if the plan did not terminate within five years, the employer had no liability. The maximum of each employer's liability was 30% of its net worth. Because an employer who withdrew from a plan more than five years prior to its termination escaped with no liability, the remaining employers bore a greater share of liability. There was thus an incentive for employers to

withdraw from plans in order to avoid future liability. Many withdrawals resulted, and the solvency of pension plans was threatened. *Yahn & McDonnell,* 787 F.2d at 130. For another overview of MPPAA, see *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1243–44 (3d Cir.1987).

**3.** For a practical explanation of how withdrawal liabilities are calculated, including an explanation of the allocation formulas, see Schmidt, *MPPAA Withdrawal Liability: Calculation, Methodology, Statutory Limitations, and Exceptions, and Accounting Treatment,* in Practising Law Institute, ERISA: The Multiemployer Pension Plan Amendments Act of 1980, 33–61 (B. Obrentz & A. Woodard, Cochairmen 1984).

**4.** Section 1401(b)(2) provides for an action "to enforce, vacate, or modify the arbitrator's award"; however in any such proceeding "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). *See generally Yahn & McDonnell,* 787 F.2d at 135–44 (declaring unconstitutional the statutory presumption of correctness granted by arbitrator to Fund's determination of withdrawal liability, but re-

however MPPAA's primary mandate for these disputes is plain: *arbitrate first.* § 1401(a)(1); *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1248–49 (3d Cir.1987).

The pages of the Federal Reporter are replete with challenges to this mandate, as litigants have attempted to bypass arbitration in favor of the federal courts and the courts have struggled to develop rules to determine when a MPPAA dispute must first go to arbitration. *See, e.g., Flying Tiger; Dorn's Transp. v. Teamsters Pension Trust Fund,* 787 F.2d 897 (3d Cir. 1986); *Republic Indus. v. Central Pa. Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982); *Grand Union Co. v. Food Employers Labor Relations Ass'n,* 808 F.2d 66 (D.C.Cir.1987). This dispute presents another such challenge. *See infra* Parts III.A., IV. However, because we conclude that part of Colteryahn's claim, which alleges fraud and misrepresentation, need not first be submitted to arbitration, we must also consider the basis for federal jurisdiction over that claim, *see infra* Part III.B., and the substantive basis, if any, for a federal cause of action, *see infra* Part III.C.

## II. FACTS AND PROCEDURAL HISTORY

The district court dismissed this case pursuant to Fed.R.Civ.P. 12(b)(1) before defendants even filed an answer, and thus no factual record has been developed. The following facts, therefore, are culled primarily from plaintiff's complaint, all of which we must assume to be true for purposes of this appeal. *See Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666, 668 (3d Cir.1988).

Prior to 1976, Colteryahn was a member of the Greater Pittsburgh Dairy Industry Pension Fund ("Dairy Fund"). After extended negotiations in 1975 and 1976 be-

tween the Dairy Fund and the Western Pennsylvania Fund, the Dairy Fund agreed to merge into the Western Pennsylvania Fund. A merger agreement was executed in December, 1976. However, the date of the actual consummation of the merger is unclear, occurring sometime between December, 1975 and April, 1984.[5]

The events that surrounded this merger agreement form the gravamen of Colteryahn's complaint. Colteryahn charges that the Western Pennsylvania Fund, its trustees, and various actuaries and accountants employed by the Fund, misrepresented the financial status of the Fund at the time of the merger, and thus fraudulently induced Colteryahn to accede to and approve the merger.[6] Moreover, Colteryahn charges the defendants with a continuing series of misrepresentations, concealments and nondisclosures that induced Colteryahn to remain a contributing employer of the Fund until 1984 or 1985. Specifically, Colteryahn contends that during the merger negotiations, and up until an extensive examination of the Fund's financial reports in November, 1984, the Fund fraudulently failed to disclose the existence of large unfunded liabilities that predated its merger with the Dairy Fund.

During the course of a labor dispute extending from mid–1984 to mid–1985, Colteryahn withdrew from the Fund. In accordance with MPPAA, the Fund imposed upon Colteryahn a withdrawal liability assessment, which the Fund calculated to be $589,239. Colteryahn challenged the calculation of this assessment in an arbitration proceeding which was pending at the time of oral argument in this case, contesting, *inter alia,* the interest rate used by the Western Pennsylvania Fund in its actuarial calculations and the inclusion of Colteryahn's contributions to the (predecessor) Dairy Fund in computing the Western Pennsylvania Fund's contribution history

---

taining presumption of arbitral correctness upon judicial review).

**5.** There is no explanation in the record for this surprisingly long period.

**6.** Although not explained in any detail in the complaint or in appellant's briefs, apparently

Colteryahn, as a member of the Dairy Fund, had the power to veto the merger. Colteryahn claims that it would have withheld its approval had it known of the true financial condition of the Western Pennsylvania Fund.

for purposes of the withdrawal liability allocation formula. However, Colteryahn has advanced two challenges to the assessment which it argues should be heard in federal court, rather than by an arbitrator.

First, in Counts 1, 3 and 4 of its complaint, Colteryahn pleads various fraud and misrepresentation claims, contending that the withdrawal liability assessment of $589,239 actually represents unfunded liabilities of the Fund that predated the merger and which were concealed from Colteryahn, and therefore that Colteryahn is not responsible for them. Count 1 is styled as an equitable claim under ERISA, seeking to prevent the Fund from benefitting from its wrongdoing, and Counts 3 and 4 request damages under ERISA from the various defendants. Second, in Count 2, Colteryahn seeks a declaratory judgment that payments made by Colteryahn to reduce the unfunded liabilities of the Dairy Fund at the time of the merger were not "contributions" under ERISA, and therefore were improperly included in assessing plaintiff's withdrawal liability. Colteryahn contends that neither the fraud counts nor the count disputing the contribution calculation states the type of claim that Congress intended for an employer to submit to arbitration.

In addition, Colteryahn sets forth, in Counts 5 through 9, several state common law claims for breach of contract, misrepresentation, negligence and civil conspiracy.

The Fund moved to dismiss the complaint for lack of subject matter jurisdiction, asserting that Colteryahn must first submit its challenges to arbitration. The district court agreed, and dismissed the federal claims for failure to exhaust administrative remedies provided by MPPAA. The court then dismissed the state law counts for lack of pendent jurisdiction.[7] Colteryahn appeals from the dismissal of its complaint, and, as we have noted, the Fund cross-appeals, contending that the district court

should have declared the state law claims preempted by ERISA, rather than dismissing them, which has the effect of allowing Colteryahn to pursue them in state court.

## III.  COUNTS 1, 3 AND 4: THE CLAIMS OF FRAUDULENT INDUCEMENT

### A.  *Arbitrability*

The district court held that arbitration could provide a full and fair remedy for the claims that Colteryahn was fraudulently induced to join and remain in the Fund, and therefore that MPPAA requires Colteryahn first to submit these claims to arbitration. We disagree.

The Fund points to no evidence that a MPPAA arbitrator, schooled in the technical application of MPPAA's statutory requirements, has any expertise in resolving claims of fraud and misrepresentation. Moreover, even if an arbitrator possessed the expertise to decide Colteryahn's fraud claims, it is plain that the statute neither grants the MPPAA arbitrator such power nor, more importantly, deprives the federal courts of the power to decide such claims in the first instance. Section 1401(a)(1), the only provision that might provide a basis for denying the federal courts jurisdiction that they otherwise could exercise, provides for arbitration of disputes "concerning a determination made under sections 1381 through 1399." 29 U.S.C. § 1401(a)(1). However, sections 1381 through 1399 are technical provisions, describing how and when withdrawal liability is to be assessed. For example, § 1384 explains when a sale of an employer's assets constitutes a withdrawal from a plan. Section 1385, 1386 and 1388 describe how to adjust an assessment for a partial withdrawal. Section 1389 provides for certain "de minimus" exceptions. Section 1391 sets forth the several accepted methods for calculating the assessment itself.[8]

---

**7.**  The motion to dismiss was made jointly by the Fund and its named trustees; however, for the sake of simplicity, this opinion will refer to these defendants collectively as "the Fund." The record does not show whether the other defendants joined in the motion; however, it is clear that the district court dismissed the entire complaint.

**8.**  Other sections between 1381 and 1399 deal with employers who only contributed to a plan for a temporary period; suspensions of contri-

■ These sections provide no basis for either adjusting or eliminating an assessment based on fraud or misrepresentation, and we have been cited to no legislative history or other authority even remotely suggesting any such basis. Moreover, not one of the statutory provisions even arguably implicated by Colteryahn's fraud claim falls within sections 1381–1399. *See infra* Parts III.B, III.C. Plainly, Colteryahn's dispute with the Fund does not concern any "determination made under" any of these provisions. Rather, Colteryahn's claim that it was fraudulently induced to become and remain a contributing member of the Western Pennsylvania Fund differs significantly from the types of highly technical MPPAA issues that the statute has assigned to arbitration. We therefore reject the district court's holding that it was without jurisdiction to hear that claim in its various forms.

### B. *Jurisdiction*

The fact that MPPAA's arbitration requirement does not deprive the court of jurisdiction to hear the fraud and misrepresentation claims does not end the inquiry, for Colteryahn still must assert some affirmative basis for federal jurisdiction and point to particular substantive provisions or rights that the Fund has allegedly violated.

Colteryahn relies on 29 U.S.C. § 1451, which creates federal jurisdiction over MPPAA disputes. The Fund, however, contends that Colteryahn's challenge is merely a thinly-disguised ERISA breach of fiduciary duty claim, and that Colteryahn, as an employer, cannot bring such a claim because only a participant, beneficiary, fiduciary, or the Secretary of Labor has standing to bring an ERISA breach of fidu-

ciary duty suit. *See, e.g.,* 29 U.S.C. § 1132(a)(2) (1982) ("A civil action may be brought ... by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief [for breach of fiduciary duty]"); *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 153 & n. 3 (3d Cir.1985) (holding that "§ 1132 must be read narrowly and literally," and implying, in dicta, that a non-fiduciary employer does not have standing to sue under § 1132); *Tuvia Convalescent Center v. Nat'l Union of Hosp. & Health Care Employees,* 717 F.2d 726, 729–30 (2d Cir.1983) (employer has no standing under § 1132). The Fund's legal proposition is correct. However, we agree with Colteryahn that it has not attempted to assert a breach of fiduciary duty claim.

■ Fiduciary duties under ERISA, as a general rule, are owed to participants and beneficiaries only. *See, e.g., Alton Memorial Hosp. v. Metropolitan Life Ins. Co.,* 656 F.2d 245, 249 (7th Cir.1981); *see generally* 29 U.S.C. §§ 1101–1114 ("Fiduciary Responsibility"). Colteryahn, however, has not alleged that the defendants acted contrary to the best interests of the participants or beneficiaries, in violation of such a duty. Rather, Colteryahn has alleged fraud and misrepresentation causing Colteryahn itself to suffer an injury that is separate and distinct from any possible injury to others. There is no claim that the Fund acted in breach of a statutory fiduciary duty to act in the best interests of Colteryahn, nor could there be one, because the Fund had no such duty. Thus we reject the Fund's attempt to characterize Colteryahn's suit as a breach of fiduciary duty suit under § 1132.[9]

butions during labor disputes; actuarial assumptions; and various exceptions. All of these are technical provisions.

9. We find further support for this conclusion in the fact that the Fund's reading of Colteryahn's complaint would lead to an untoward result. Were we to conclude that this is essentially a breach of fiduciary duty suit, then we would also be constrained to conclude that Colteryahn, as an employer, has no standing to bring this action. We refuse to impute to Congress, without affirmative evidence in the legislative history, an intent to deny an aggrieved employer a federal forum to redress a fraud directed at itself and possibly no other.

The Fund correctly points out that the Secretary of Labor also has standing to bring suit under § 1132. *See* 29 U.S.C. § 1132(a)(2). However, we see no evidence in the legislative history to lend support to the Fund's assertion, made at oral argument, that Congress intended that the only option available to defrauded em-

As we have noted, Colteryahn submits that we should look to § 1451 for the jurisdictional basis for this suit. We agree. Section 1451(a)(1) provides, in pertinent part:

A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, ... may bring an action for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451 (1982). "[T]his subtitle" refers to Subtitle E of ERISA, 29 U.S.C. §§ 1381–1453, i.e., MPPAA. The Fund's assessment of withdrawal liability, as well as its purported misrepresentations and concealments of the Fund's financial condition, plainly were "act[s] or omission[s] ... under this subtitle with respect to a multiemployer plan." Thus, by the very terms of the statute, Colteryahn, as an employer, may bring an action for redress of these allegedly wrongful acts. Section 1451, however, merely provides jurisdiction over this claim; it does not define or create the claim itself. We therefore next must determine the substantive basis for such a claim.

## C. The Substantive Basis for the Claim

Colteryahn advances two potential substantive bases for its claim. It points first to § 1411, which provides both substantive and procedural criteria that must be satisfied in order to consummate a valid merger of two multiemployer plans under MPPAA.[10] Second, it relies upon federal common law. It is our obligation first to explore a possible statutory basis for the claim. For the reasons noted in the margin, such a claim (under § 1411) may or may not be viable;[11] while Colteryahn is

---

ployers would be to file a complaint with the Labor Department. In fact, it is not clear that the Secretary can bring such a suit even upon the prompting of an aggrieved employer. *See* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 5038, 5108 ("the Secretary of Labor is not to bring an action for equitable relief with respect to a violation of the participation, vesting and funding standards of title I unless he is requested to do so either by the Secretary of the Treasury or by one or more participants, beneficiaries, or fiduciaries of the plan"); 29 U.S.C. § 1132(b)(1).

10. Section 1411(b) provides:

A merger or transfer satisfies the requirements of this section if—

(1) in accordance with regulations of the corporation, the plan sponsor of a multiemployer plan notifies the corporation of a merger with or transfer of plan assets or liabilities to another multiemployer plan at least 120 days before the effective date of the merger or transfer;

(2) no participant's or beneficiary's accrued benefit will be lower immediately after the effective date of the merger or transfer than the benefit immediately before that date;

(3) the benefits of participants and beneficiaries are not reasonably expected to be subject to suspension under section 1426 of this title; and

(4) an actuarial valuation of the assets and liabilities of each of the affected plans has been performed during the plan year preceding the effective date of the merger or transfer, based upon the most recent data available as of the day before the start of that plan year,

or other valuation of such assets and liabilities performed under such standards and procedures as the corporation may prescribe by regulation.

29 U.S.C. § 1411(b) (1982).

11. Colteryahn alleges that the Fund has failed to provide a true actuarial valuation of its assets and liabilities, in violation of § 1411(b)(4). *See also* 29 C.F.R. Part 2672 (notice requirements for mergers of multiemployer plans); *id.* § 2672.7(e) (detailing the information required in such notice).

The requirements of § 1411 were added to ERISA as a part of MPPAA in 1980, *see* Pub.L. No. 96–364, Title I, § 104(2), 94 Stat. 1244 (1980), four years after the merger agreement between the two plans was signed. Colteryahn, however, correctly points out that in its complaint it alleged that the merger was not actually consummated until "sometime between December 1975 and April 1984." Complaint ¶ 13, App. at R–5. *See supra* note 5. Because Colteryahn has not yet had an opportunity to prove these allegations, we must assume them to be true for purposes of this appeal. On remand, Colteryahn may of course conduct discovery to determine when the merger of the two plans was consummated. If it was consummated on or after MPPAA's effective date of September 26, 1980, then MPPAA's merger requirements, § 1411 may apply.

Additionally, Colteryahn contends that we should apply the requirements of § 1411 retroactively, at least in this case where the fraud allegedly continued beyond the formal effective date of the provision. Colteryahn, however, points to nothing in the legislative history to

free to pursue this claim in the remanded proceeding, we do not rely upon it here. Rather, we rely upon the second ground.

It is by now well settled that federal courts are empowered to create a federal common law of pension plans under ERISA, in order to effectuate Congress' intent to preempt the area, *see infra* note 22, and create a comprehensive federal regulatory scheme. *See Murphy v. Heppenstall Co.*, 635 F.2d 233, 237 (3d Cir.1980), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); *see also Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 157–58 (3d Cir.1985) (opinion of Becker, J.); *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 936–37 (3d Cir.1985); *In re White Farm Equip. Co.*, 788 F.2d 1186, 1191 (6th Cir.1986) (federal court must develop its own rule of decision in cases involving employee welfare plans "where ERISA itself furnishes no answer"); 29 U.S.C. § 1144(a) (1982).

It is axiomatic that, as a general rule, a party should not be allowed to profit from its own wrongs. We believe that this rule is particularly apposite when dealing with federally regulated pension plans, because

"Congress has emphasized 'the equitable character' of [these] plans, 29 U.S.C. § 1001(c), [and therefore] we believe that equitable principles should be applied in this case." *Reuther v. Trustees of Trucking Employees Welfare Fund*, 575 F.2d 1074, 1078 (3d Cir.1978).[12] Assuming the truth of Colteryahn's allegations, the substantial withdrawal liability assessed upon Colteryahn in this case stemmed in large part (if not entirely) from fraudulent misrepresentations by the Fund, for which the federal common law of pension plans would provide a remedy.[13] Indeed, we would find it quite curious if Congress had given multiemployer plans the immense power that the Fund has exercised in this case—*viz.*, the power to assess upon a withdrawing employer a substantial penalty while providing the employer with few defenses—yet did not intend to place some check on the conduct and practices of such plans. Moreover, we doubt that Congress intended that innocent employers, penalized by the fraudulent exercise of such powers, would be without remedy. Finally, given the predominant federal interest in the conduct of pension plans' affairs, any check on

indicate an intent to apply § 1411 retroactively, and we have grave doubts about retroactive application. Congress has legislated quite precisely and extensively in terms of the effective dates of various MPPAA and other ERISA provisions, *see* 29 U.S.C.A. § 1461 (West Supp.1988), yet has made no specific references to § 1411 beyond the general effective date of MPPAA, September 26, 1980, *see* § 1461(e).

If § 1411 is found not to apply, in order to bring a federal cause of action Colteryahn will need to point to some other substantive standard that it claims was violated. Moreover, even if applicable, § 1411 (and the merger regulations promulgated under § 1411, *see* 29 C.F.R. Part 2672 (1987); *id.* § 2672.7(e)) may not provide sufficient substantive requirements to encompass all of Colteryahn's allegations of fraud and misrepresentation. For example, it is not clear whether the statute and regulations cover continuing misrepresentations after the merger has already been consummated. Moreover, it is possible that the views of the Pension Benefit Guaranty Corporation, which promulgated and enforces MPPAA's merger regulations, could be relevant to a determination of any violation thereof. Finally, by their very terms, neither the statute nor the regulations mention fraud or misrepresentation; plainly some judicial gloss

on these requirements would be needed to support Colteryahn's claims. We intimate no view on this question, however, because we find an alternative basis for Colteryahn's cause of action in federal common law.

12. Section 1001(c), cited in *Reuther*, states that it is the policy of ERISA, *inter alia*,

to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.

29 U.S.C. § 1001(c) (1982).

13. As we understand the complaint, Colteryahn alleges that it would not have approved the merger had it known of the substantial unfunded liabilities of the Fund and, moreover, that the withdrawal liability assessment (which is calculated by charging the withdrawing employer with its pro rata share of the plan's unfunded liabilities) consists primarily of the *pre-merger* undisclosed liabilities. *See, e.g.*, Complaint ¶¶ 16, 25, App. at R–6, R–8.

such power must be available in federal court.

The fraud alleged in this case presents a much more appropriate occasion for invocation of equitable principles than the cases that have permitted employers to gain restitution of improperly paid contributions when the fault for the improper payments lay solely with the contributing employer rather than with the plan. *See, e.g., Airco Indus. Gases v. Teamsters Health and Welfare Pension Fund,* 618 F.Supp. 943, 948, 951 (D.Del.1985) *("Airco I")* (although an employer has no standing to sue under § 1132(a), a cause of action for unjust enrichment to recover pension contributions mistakenly made to a plan will be permitted because such an action, "equitable in nature, and developed in light of the policies of ERISA, is appropriate and 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress'") (quoting *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982)) (other citations omitted); *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 233–36 (6th Cir.) (recognizing an equitable claim for restitution of mistaken pension contributions under federal common law), *cert. denied,* —— U.S. ——, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *Airco Indus. Gases v. Teamsters Pension Trust Fund,* 668 F.Supp. 893, 900–01 (D.Del.1987) (fleshing out the cause of action recognized in *Airco I,* and collecting cases that have recognized similar causes of action), *appeal docketed,* No. 87–3642 (3d Cir. Sept. 28, 1987); *contra Dime Coal Co. v. Combs,* 796 F.2d 394, 399 n. 7 (11th Cir.1986) ("Although the question is not well presented, . . . we hold that no federal common law right to recovery of the disputed [mistaken] contributions at issue in this case exists."); *McHugh v. Teamsters Pension Trust Fund,* 638 F.Supp. 1036, 1048–49 (E.D.Pa. 1986) (no cause of action for restitution of mistaken contributions); *Crown Cork & Seal Co. v. Teamsters Pension Fund,* 549 F.Supp. 307, 310–12 (E.D.Pa.1982) (same), *aff'd mem.,* 720 F.2d 661 (3d Cir.1983).

We have no occasion in this case to consider ruling on the issue of the viability of a claim based on the employer's mistake. In this case the issue is fraud.

■ In sum, we hold that, under the federal common law of pension plans, Colteryahn, as a defrauded employer, may sue in federal court for the return of any withdrawal liability sums that were assessed as a result of a fraudulent inducement to join the Fund. Colteryahn may thus proceed with Counts 1, 3 and 4 of its complaint.

## IV. ARBITRABILITY OF COUNT 2 (PAYMENTS TO REDUCE THE DAIRY FUND'S LIABILITIES)

Count 2 of Colteryahn's complaint, as we understand it, seeks a determination whether certain payments made at the time of the merger should be counted as "contributions" for the purpose of apportioning the Fund's unfunded vested liabilities among its member employers. Section 1391 requires such apportionment to assess a withdrawal liability sum. The district court held that, under 29 U.S.C. § 1401, Colteryahn must first exhaust the administrative remedy of arbitration before proceeding on this claim to district court. We agree.

Section 1401(a)(1) states: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). In *Republic Industries v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982), we explained that

> Congress, in enacting MPPAA, expressed a clear preference for self-regulation through arbitration, 29 U.S.C. § 1401(a)(1); . . . Thus, in accordance with the exhaustion doctrine's policy of deference to Congress, the legislature's decision that arbitration, and not the courts, is the proper forum for the initial resolution of disputes should be respected.

*Id.* at 294–95.[14]

**14.** We also noted in *Republic Industries* certain exceptions to the exhaustion requirement, not relevant here, and held that

> because Republic mounts a facial challenge to the constitutionality of MPPAA and because arbitration could neither moot the constitutional issues presented by resolving this mat-

ter on nonconstitutional grounds nor develop a factual matrix for the later resolution of the issues by the judiciary, arbitration does not provide an adequate administrative remedy for Republic's claims, and it would be futile to compel exhaustion.

693 F.2d at 297 (footnote omitted).

Colteryahn contends, however, that this is a pure legal issue, the resolution of which requires only the interpretation of a statute, and no factual development. Moreover, Colteryahn claims that, at this early stage in the litigation, the Fund has not yet identified any disputed issues of material fact. Without such a factual dispute, Colteryahn contends, arbitration is unnecessary. Colteryahn's contentions, however, are entirely undercut by our recent decision in *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241 (3d Cir.1987).[15]

In *Flying Tiger* we noted that § 1401 "does not differentiate between legal and factual questions; it simply dictates that '[a]ny dispute between an employer and the plan sponsor ... shall be resolved through arbitration.' 29 U.S.C. § 1401 (1982)." 830 F.2d at 1255 (emphasis and ellipsis supplied by *Flying Tiger* court). We therefore held that " 'it should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration.' " *Id.* (quoting *I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 418 (D.C.Cir.1987);[16] *see also Teamsters Pension Trust Fund— Bd. of Trustees of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987) ("questions of statutory interpretation are not excepted from arbitration under MPPAA" (footnote omitted)). Thus, where the issue of statutory interpretation "involves only a MPPAA section that Congress explicitly reserved for arbitration," arbitration is the appropriate route for resolution of the dispute. *Flying Tiger*, 830 F.2d at 1254.

As noted above, Colteryahn seeks a determination whether payments made to reduce the unfunded liabilities of the Dairy Fund at the time of the merger constitute "contributions" within the meaning of § 1391 for the purpose of calculating Colteryahn's withdrawal liability. We believe that such a question constitutes the type of calculation issue for which MPPAA arbitration is most appropriately designed, because it is directly related to the actual determination of the size of the assessment. Unlike the fraudulent inducement claims, which concern events external to the actual calculation of the assessments (e.g., representations made by the Fund to Colteryahn and the extent of Colteryahn's reliance on these representations), Count 2 challenges the calculation itself, contending that the wrong inputs were plugged into the equation when doing the actual computation. In sum, Colteryahn's challenge "concern[s] a determination made under sections 1381 through 1399" and therefore, by the very terms of the statutory mandate, "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).[17]

---

**15.** The decision in *Flying Tiger* was filed subsequent to the briefing in the instant case. At our request, the parties submitted supplemental letter memoranda on the effect of *Flying Tiger.*

**16.** The court in *Flying Tiger* quoted approvingly an unpublished opinion of the District Court for the District of Columbia:

Congress has devised an elaborate statutory scheme for resolving disputes that may arise over the determinations and amounts of withdrawal liability. To permit an employer to stylize his [or her] claim into a 'question of law' and thereby bypass this framework would surely frustrate the intent of Congress and should not be sanctioned by the courts. 830 F.2d at 1255 (quoting *Combs v. Pelbro Fuel, Inc.*, No. 83–1524 mem. op. at 14 (D.D.C. Nov. 15, 1984) [available on WESTLAW, 1984 WL 3230] ) (bracketed material supplied by *Flying Tiger* court).

**17.** We find Colteryahn's reliance on our decision in *Dorn's Transportation v. Teamsters Pension Trust Fund,* 787 F.2d 897 (3d Cir.1986), to be misplaced. In *Dorn's* we reached the merits of a MPPAA dispute without first requiring resort to arbitration, and held that, because "there was no need for the development of a factual record, we do not believe the district court abused its discretion in denying discovery and bypassing arbitration." *Id.* at 903. *Dorn's*, however, did not purport to set forth a black letter rule; it merely found no abuse of discretion in the district court's decision to reach the merits. *See id.* In the instant case, however, the district court elected to dismiss the complaint in favor of arbitration, rather than reach the merits. We cannot quarrel with this decision, because we view the mandate of § 1401 as unequivocal.

Moreover, *Flying Tiger* appears to have limited *Dorn's* to its particular facts. *See, e.g. Flying Tiger,* 830 F.2d at 1253 n. 19. *Dorn's* itself recognized that it would be a "rare case" where there would be *"no* need" for factual development, 787 F.2d at 903 (emphasis added), and *Flying Tiger* makes clear that "any doubt concerning fact/law differentiation as a means of determining whether arbitration is appropriate should be resolved in favor of arbitration." 830 F.2d at 1255.

It is interesting to note, in this regard, that the law of MPPAA arbitration has evolved in this circuit along a similar course to that taken in the D.C. Circuit. In *IAM National Pension Fund*

We therefore will affirm the district court's holding that Colteryahn must first submit Count 2 to arbitration. However we will reverse the court's order insofar as it dismissed Count 2 outright. The logical course would have been to stay proceedings on Count 2 until arbitration is completed, *see, e.g., Flying Tiger,* 830 F.2d at 1256, and we will so order.

## V. THE CROSS–APPEAL: PREEMPTION

After dismissing each of Colteryahn's federal claims, the district court held that it could not assert pendent jurisdiction over plaintiff's state law counts and therefore dismissed them as well. In its cross-appeal, the Fund urges us to hold that the district court should have asserted jurisdiction over these claims and then dismissed them as failing to state a cause of action because they are preempted by ERISA. *See* 29 U.S.C. § 1144(a) (1982), ERISA's express preemption provision.[18]

Colteryahn counters that its state law claims allege acts of misrepresentation and breach of contract that occurred prior to the merger of the two plans, hence prior to Colteryahn's joining the Western Pennsylvania Fund. Thus, Colteryahn contends, although its suit may affect the Fund, it does not "relate" to the Fund as required by § 1144(a) in order to be preempted, because it concerns obligations of the defendant (arising out of tort and contract duties) independent of any duties under ERISA.

Since we have held that Colteryahn has a cause of action under the federal common law of ERISA for fraud and misrepresentation, and since the allegations made in Colteryahn's federal counts are substantially similar to the allegations made in Colteryahn's state law claims, we express serious doubt whether, consistent with the broad preemptive nature of ERISA, we could allow Colteryahn to proceed with its parallel state law claims.[19] *See* 29 U.S.C. § 1144(a) ("the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan").

The district court has not yet ruled on this question, however, and we prefer, as a matter of prudence, to allow the district court to address this issue in the first instance.[20] We note that the district court

---

*v. Stockton Industries,* 727 F.2d 1204 (D.C.Cir. 1984), relied on by this court in *Dorn's,* a panel of the D.C. Circuit appeared to hold that a pure question of statutory interpretation need not first be submitted to MPPAA arbitration. *See Dorn's,* 787 F.2d at 903; *IAM,* 727 F.2d at 1209–10. However, three years later, in *Grand Union Co. v. Food Employers Labor Relations Association,* 808 F.2d 66 (D.C.Cir.1987), another panel of the D.C. Circuit plainly limited *IAM* to the unique facts of that case (where the pension fund had "effectively waived the right to [demand arbitration]," 808 F.2d at 70), and held that MPPAA's arbitration-first rule applies even to pure statutory questions. *See id.* at 69–71.

At all events, we are not as confident as Colteryahn that this case would not benefit from *some* factual development. For example, it might be useful to learn trade custom as to the meaning of "contributions," as well as the intent and understandings of the parties at the time these disputed payments were made. A clear expression of intent conceivably might obviate the need for a general statutory exegesis.

**18.** Section 1144(a) provides, in pertinent part:
   Except as provided in subsection (b) [not pertinent here], the provisions of this subchapter [relating to "protection of employee benefit rights"] and subchapter III of this chapter [relating to "plan termination insurance," and including MPPAA] shall supersede any and all State laws insofar as they may

now or hereafter relate to any employee benefit plan [covered by ERISA].
   29 U.S.C. § 1144(a).

**19.** *See generally Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) ("The pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.") (citation omitted); *Shaw v. Delta Air Lines,* 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983) ("'the substantive and enforcement provisions of [ERISA] are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plants'") (footnote omitted) (quoting 120 Cong.Rec. 29,933 (1974) (statement of Sen. Williams)).

**20.** Because of the posture in which we remand this case—directing the district court to exercise jurisdiction over Colteryahn's fraudulent inducement claims—we need not decide an interesting and difficult question presented by the Fund's cross-appeal, *viz.,* whether the district court would have had jurisdiction to declare the state law claims preempted even in the absence of any anchoring federal claim. *Cf. Metropolitan Life Ins. Co. v. Taylor,* — U.S. —, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (federal court has jurisdiction over state law claims that are preempted by ERISA but fall within the scope of

will now have the benefit of our ruling that Colteryahn has stated a federal cause of action for fraud and misrepresentation. Moreover, the district court is in a better position than we are to glean the precise nature of the state law counts in order both to compare them to the federal claims and to determine whether they "relate" to an employee benefit plan. Finally, given that our disposition of the other issues requires a remand and substantial further proceedings in the district court, we do not believe that this further remand will constitute an inefficient use of judicial resources. In any event, the district court will have to reconsider its decision to deny pendent jurisdiction, given our holding that the court has subject matter jurisdiction over Colteryahn's fraud and misrepresentation claims.

## VI. CONCLUSION

For the foregoing reasons we will reverse the order of the district court. The case will be remanded with instructions to exercise federal subject matter jurisdiction over Counts 1, 3 and 4, to stay proceedings on Count 2 until arbitration is completed, and to determine whether Counts 5 through 9 are preempted by ERISA.

**SUR PETITION FOR PANEL REHEARING AND REHEARING IN BANC**

Present: GIBBONS, Chief Judge, SEITZ, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, and COWEN, Circuit Judges.

The petition for rehearing filed by intervenor Pension Benefit Guaranty Corporation in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is DENIED.

Judge Seitz does not desire rehearing on the assumption that the decision does not

§ 1132); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (federal court does not

imply that the recognized actions can form a basis for interference with the statutory scheme for recovering withdrawal liability.

have jurisdiction over state law claims that are preempted by ERISA but for which ERISA does not provide an alternative cause of action).