643 So.2d 575 (1994)
Joe INGRAM, et al.
v.
AMERICAN CHAMBERS LIFE INSURANCE COMPANY, et al.
1930194.
Supreme Court of Alabama.
May 13, 1994.
Rehearing Denied June 17, 1994.
Darron C. Hendley, Montgomery.
Forrest S. Latta and James W. Lampkin II of Pierce, Carr & Alford, P.C., Mobile, for American Chamber Life Ins. Co.
J. Allen Schreiber and Daniel S. Wolter of Lloyd, Schreiber & Gray, P.C., Birmingham, for Stevenson Ins. Agency, Inc.
Ted Taylor and Leah O. Taylor of Taylor & Roberson, Prattville, for amicus curiae Alabama Trial Lawyers Ass'n.
Richard S. Manley of Manley, Trager & Perry, Demopolis, and J. Mark Hart of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for amicus curiae Alabama Defense Lawyers Ass'n.
S. Eason Balch, Jr., Birmingham, and Jaime Ruth Ebenstein and Mark E. Schmidtke, Boca Raton, FL, for amicus curiae Business Council of Alabama.
SHORES, Justice.
The issue in this case is whether a state-law claim of fraud in the inducement is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").
Joseph J. Ingram, Jr., and Janet Ingram and their minor daughter, Jill Ingram, each own one-third of Ingram Demolition, Inc. The Ingrams took out a group health insurance policy for Ingram Demolition with American Chambers Life Insurance Company. The policy was sold to them by Roger Davidson, an employee of Stevenson Insurance Agency. Ingram Demolition; Joseph; and Jill, by and through her mother (all here referred to as "the Ingrams"), sued Roger Davidson, Stevenson Insurance Agency, and American Chambers Life Insurance Company ("the defendants"). Count I of the Ingrams' complaint alleged bad faith refusal to pay benefits under the policy. Count II alleged fraud in the inducement, specifically that the defendants negligently, wantonly, or intentionally misrepresented that treatment for kidney stones was covered by the policy.
The Ingrams filed their complaint in the Elmore County Circuit Court. The defendants had the case removed to the United States District Court for the Middle District of Alabama, Northern Division, which subsequently remanded the case to Elmore County. The defendants then moved to dismiss *576 the Ingrams' claims on the grounds that their state common law tort and contract claims were preempted by ERISA. The circuit court granted the motion as to both claims. The Ingrams filed a "motion to restate claim and amend final order of dismissal," seeking to restate Count I of their complaint to state a cause of action under ERISA. The circuit court granted the Ingrams' motion. The circuit court ruled that Count I of the Ingrams' complaint had restated a cause of action under ERISA, and it retained jurisdiction over the ERISA claim. The judge issued a "Final Order of Dismissal" in which he dismissed Count II with prejudice, holding that that count was preempted by ERISA. This appeal relates only to the dismissal of the claim alleging fraud in the inducement. We reverse and remand.
The facts of this case are relatively simple. Roger Davidson sought to sell a group health insurance plan to the Ingrams. Janet Ingram, the secretary and treasurer of Ingram Demolition, told Davidson that she, Joseph, and Jill all had a history of kidney stones. Davidson asked when the last occurrence of kidney stones had been, and Janet told him that Jill had had one 13 months before. Davidson assured Janet that because the incident had occurred more than six months before, kidney stones would not be considered a preexisting condition. He instructed Janet to omit reference to the kidney stones on the application. Davidson specifically told Janet that if Jill had any more kidney stones, treatment for the condition would be covered under the policy. Based on this representation, the Ingrams purchased the policy.
The Ingrams paid their monthly premiums on the policy. While the policy was in effect, Jill developed a kidney stone and was hospitalized. American Chambers paid the medical bills for this incident. About one year later, Jill developed another kidney stone; American Chambers refused to pay any more benefits for treatment of kidney stones. American Chambers contends that, if it had known about Jill's prior kidney stone problems, it would not have provided coverage for her kidney stones. The Ingrams contend that the defendants misrepresented material facts and that they were fraudulently induced to purchase the group health plan.
The issue is whether the Ingrams' claim of fraud in the inducement is preempted by ERISA. The Ingrams rely on our opinion in HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990), to support their position that a claim of fraud in the inducement does not "relate to" an employee benefit plan and that it is, therefore, not preempted by ERISA. The defendants argue that a claim of fraud in the inducement "relates to" an employee benefit plan and that our decision in Menton, supra, holding otherwise, has subsequently been repudiated, not only by this Court, but also by the United States Supreme Court.
ERISA § 514(a), appearing at 29 U.S.C. § 1144(a), addresses the scope of ERISA's preemption. Section 514(a) provides that subchapter I of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a). The United States Supreme Court has stated, "The [ERISA] preemption clause is conspicuous for its breadth." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 483 (1990). However, that Court went on to state, "Notwithstanding its breadth, we have recognized limits to ERISA's preemption clause." Id. The Supreme Court has repeatedly admonished that the ERISA preemption clause is not without limit and that a cause of action under a state law that has only a "tenuous, remote or peripheral" connection with employee benefit plans would not be preempted. District of Columbia v. Greater Washington Board of Trade, ___ U.S. ___, ___, n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513, 520 n. 1 (1992); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490, 503 n. 21 (1983); see also, Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 484 (1990); Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).
In McClendon, Justice O'Connor, writing for the Court, set out the analysis that the *577 United States Supreme Court would use to determine whether a state law "relates to" an employee benefit plan, and, thus, whether it is preempted by ERISA. In holding that the cause of action in McClendon was preempted, Justice O'Connor noted that the Court was not dealing with "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." 498 U.S. at 139, 111 S.Ct. at 483, 112 L.Ed.2d at 484. That statement implies that a cause of action under "a generally applicable statute that makes no reference to, or ... functions irrespective of, the existence of an ERISA plan" would not "relate to" an employee benefit plan within the meaning of § 514(a) and, therefore, would not be preempted. Id.
Under Article VI of the United States Constitution, we are bound by the decisions of the United States Supreme Court. The defendants contend that our decision in Menton, 551 So.2d 235, has been superseded by decisions of the Supreme Court. We disagree. The defendants argue that the United States Supreme Court decided in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), that a claim of fraud in the inducement was preempted by ERISA. However, our decision in Menton came after, and despite, the Supreme Court's decision in Pilot Life. In Menton, 551 So.2d at 239, we addressed the Supreme Court's decision in Pilot Life, and distinguished it.
"Although the complaint in Pilot Life contained a count for `fraud in the inducement,' the opinion makes it unmistakably clear that the only claims [the plaintiff Dedeaux] pursued were claims seeking damages for improperly processing his claims for benefits under an ERISA-regulated plan. Justice O'Connor, writing for the Supreme Court, stated as follows:
"`Although Dedeaux's complaint pled several state common law causes of action, before this Court Dedeaux has described only one of three countscalled "tortious breach of contract" in the complaint, and "the Mississippi law of bad faith" in respondent's briefas protected from the pre-emptive effect of § 514(a). The Mississippi law of bad faith, Dedeaux argues, is a law "which regulates insurance," and thus is saved from pre-emption by § 514(b)(2)(A).'
"Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, at 48, 107 S.Ct. 1549, at 1553, 95 L.Ed.2d 39, at 48 (footnote omitted). Having considered this single count, the Court held:
"`[W]e conclude that Dedeaux's state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A), and therefore is preempted by § 514(a).'

"Id. 481 U.S. 41, at 57, 107 S.Ct. 1549, at 1558, 95 L.Ed.2d 39, at 54 (footnote omitted)."
HealthAmerica v. Menton, 551 So.2d at 239, cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). The Supreme Court denied certiorari review of our decision in Menton, and, since Pilot Life, has not addressed ERISA preemption in the context of a claim alleging fraud in the inducement.
While many ERISA preemption cases before the United States Courts of Appeals have contained fraud or misrepresentation claims, few have dealt with the precise issue before this Court. Only the Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits have addressed similar issues, and they do not agree about whether ERISA preempts a state law claim of fraud in the inducement. The Third Circuit has, in dicta, expressed its doubt that a state law tort claim would survive ERISA preemption. Carl Coteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 847 F.2d 113, 124 (3d Cir.1988), cert. denied, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). The Fifth Circuit, in a case remarkably similar to the one before us, has stated:
"[W]e conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, `relates to' that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan *578 fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA."
Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir.1990) (citations omitted). In Perry v. P*I*E Nationwide Inc., 872 F.2d 157, 163 (6th Cir.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), the Sixth Circuit followed the reasoning of the Eighth Circuit in Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), and held that the plaintiffs' claims of fraud, misrepresentation, and promissory estoppel were not preempted by ERISA because ERISA does not provide a remedy for those wrongs. In Perry, the plaintiffs alleged that they had been fraudulently induced to participate in an employee stock investment plan that was "expressly subject" to ERISA. 872 F.2d at 158. In Scott v. Gulf Oil Corp., 754 F.2d 1499, 1506 (9th Cir.1985), the Ninth Circuit held that certain of the plaintiffs' claims alleging fraud and breach of fiduciary duty were not preempted by ERISA. The plaintiffs alleged that Gulf Oil had misrepresented to them that they were not entitled to severance pay and that the terms of employment with the new owner of the company were substantially as favorable as those with Gulf Oil. 754 F.2d at 1506. The Ninth Circuit based its decision on the fact that the conduct challenged by those claims was not part of the administration of an ERISA plan. 754 F.2d at 1505. In Straub v. Western Union Telegraph Co., 851 F.2d 1262 (10th Cir.1988), the Tenth Circuit treated the plaintiffs' breach of contract and negligent misrepresentation claims as a contractual action seeking to modify the terms of the plan, and, thus, did not reach the precise issue before us. In Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791 (11th Cir.1989), Farlow alleged that he was induced to drop one health insurance policy for another because of misrepresentations of his insurance agent. The Eleventh Circuit held that his misrepresentation and negligence claims were preempted by ERISA. Farlow, 874 F.2d at 794.
The Ingrams' claim of fraud in the inducement is more analogous to the claim made by Menton than to the claim made by Dedeaux in Pilot Life, and, in fact, has an even more "tenuous, remote or peripheral" connection to an ERISA plan than Menton's claim. Menton's fraud claim was based on an allegation that he had been fraudulently induced, by material misrepresentations, to drop his existing coverage under an ERISA-regulated plan and to enroll with a different ERISA-regulated plan. Menton, 551 So.2d at 237. The Ingrams, on the other hand, had no relationship with a benefit plan before they were induced to enroll in the American Chambers plan. As was discussed above, in Pilot Life, Dedeaux, although he included a claim of fraud in the inducement, in fact sought "damages for failure to provide benefits under the insurance policy." 481 U.S. at 43, 107 S.Ct. at 1551, 95 L.Ed.2d at 45. However, the Ingrams, like Menton, do not claim improper processing of a claim, nor do they claim any benefits under the terms of the plan. To the contrary, the Ingrams, like Menton, claim that they were fraudulently induced, by misrepresentation made by an insurance agent, to become a member of a group health plan. Menton, 551 So.2d at 239-40. The acts complained of would have taken place before the Ingrams had any involvement with a covered plan. Clearly, the Ingrams' claim is distinguishable from Dedeaux's claim, and is more similar to Menton's claim, but it is even more tenuously "related to" an ERISA plan than Menton's claim was.
The defendants argue that the United States Supreme Court has, since Pilot Life and Menton, clarified the broad, sweeping scope of ERISA preemption, in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), and District of Columbia v. Greater Washington Board of Trade, ___ U.S.___, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). The defendants do not argue that the Supreme Court, in those cases, addressed the precise issue in this case. Instead, they argue that that Court's expansive view of the "relate to" language of ERISA's preemption clause covers the cause of action asserted by the Ingrams. We disagree.
It was in McClendon, 498 U.S. at 139, 111 S.Ct. at 483, 112 L.Ed.2d at 484, that Justice O'Connor, writing for the Court, described *579 the statutes under which that Court would find that the causes of action would not be preempted by ERISA. And, it was in District of Columbia v. Greater Washington Board of Trade, ___ U.S. at ___ n. 1, 113 S.Ct. at 583 n. 1, 121 L.Ed.2d at 520 n. 1, that the Supreme Court most recently admonished that ERISA does not preempt a cause of action under a law that has only a "tenuous, remote or peripheral" connection with an ERISA-regulated plan. We do not believe that the United States Supreme Court uses language carelessly, and, therefore, we take it at its word. If indeed, as the Supreme Court has repeatedly stated, there are limits to the scope of the ERISA preemption clause, then this case falls beyond those limits.
Because the Ingrams' cause of action under Alabama's fraud statute has only a "tenuous, remote or peripheral" connection with employee benefit plans, and because Alabama's cause of action for fraud in the inducement is generally applicable, makes no reference to, and functions irrespective of, employee benefit plans, we hold that the Ingrams' claim is not preempted by ERISA § 514(a). Therefore, we reverse the judgment of the circuit court and remand the case for a trial.
REVERSED AND REMANDED.
ALMON,[*] STEAGALL, KENNEDY,[*] and INGRAM, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
MADDOX, Justice (dissenting).
The majority discusses various federal decisions, including Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); District of Columbia v. Greater Washington Board of Trade, ___ U.S. ___, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1985); Carl Coteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 847 F.2d 113 (3d Cir.1988); Perkins v. Time Ins. Co., 898 F.2d 470 (5th Cir.1990), and a few others, but concludes that, because the Ingrams' cause of action for fraud in the inducement under Alabama's fraud statute has only a "tenuous, remote or peripheral" connection with employee benefit plans, it is not preempted by ERISA.
I am aware, of course, of this Court's decision in HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990), in which I dissented, and I recognize that the Supreme Court of the United States refused to review this Court's decision in that case. I do not believe, however, that the denial of certiorari review in that case should be considered as the final resolution of the legal issue presented in that case, especially in view of the fact that each year the Supreme Court of the United States agrees to review only a few of the thousands of cases in which it receives certiorari petitions. It appears to me that the legal question presented in this appeal has been decided by other courts the same way the trial judge decided the question when it was presented to him. I would affirm his decision, because I believe he was right; consequently, I must disagree with the majority on its resolution of this legal question.
HOUSTON, Justice (dissenting).
I dissent. See Health America v. Menton, 551 So.2d 235, 249-56 (Ala.1989) (Houston, J., dissenting); Haywood v. Russell Corp., 584 So.2d 1291, 1298-99 (Ala.1991) (Houston, J., concurring specially); Ingersoll-Rand Co. v. McLendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Farlow v. Union Central Life Insurance Co., 874 F.2d 791 (11th Cir.1989); Ex parte Gurganus, 603 So.2d 903, 906 (Ala.1992). It would be redundant to write more.
NOTES
[*] Although Justices ALMON and KENNEDY were not present at oral argument, they have listened to the tape of that argument.